Gates v. Railroad.

F. M. GATES, Respondent, v. QUINCY, OMAHA &
KANSAS CITY RAILROAD COMPANY, Ap-
pellant.

Kansas City Court of'Appeals, May 6, 1907.

1. PASSENGER CARRIER: Ejectment of Non-Paying Passenger:
Tender of Fare: Bona Fides. ( If a traveler boards a train with
proper evidence of a right to be carried or with the intention
to pay his fare, he becomes a passenger, and if there be on
his part an honest misunderstanding as to his rights in the
payment of his fare, or under his ticket, or other evidence of
right to carriage, he has a right to reasonable parley with the
conductor on that head; and a subsequent actual tender of fare
before or during the process of expulsion gives him a right to
remain on the train. [Cases considered.] )

2. ———: ———: ———: ———. When a passenger refuses with-
out reasonable excuse to produce his ticket or pay his fare
he forfeits his rights as a passenger, and after acts in the be-
ginning of expulsion are made a tender is too late to revive
his rights, though if made before such acts are commenced
his rights to be carried will be fixed.

3. ———: ———: Force. Though a traveler forfeits his rights as
a passenger and is subject to be ejected from the car he should
not be removed in an unnecessary and harmful manner, nor
injuries inflicted beyond what are reasonably to be expected
from proper effort in expelling him.

4. ———: ———: ———: Pleading. A petition is held to be
based upon force as well as unlawful removal.

5. ———: ———: Pleading: Tender by Third Party. A
carrier is not bound to enter into a contract with a person at
the solicitation of a third party, nor to accept a tender of fare
from a person without his . consent or knowledge; yet if the
tender is made by a third person in behalf of a passenger in
his presence and without his repudiation, it is assumed that
his silence is an acquiescence in the effort in his behalf.

6. ———: ———: ———: ———. Suggestions as to a new trial.

Appeal from Adair Circuit Court.—*Hon. Nat M. Shel-
ton,* Judge.

Reversed and remanded.

*James G. Trimble* and *Willard P. Hall* for appellant.

(1)  The trial court erred in instructing the jury that they could find for the plaintiff even though he was properly ejected, if they further found that he was ejected with unnecessary force or at an unsafe and dangerous place.  Logan v. Railroad, 77 Mo. 663; Johnson v. Railroad, 46 N. H. 213.  (2)  The trial court erred in refusing to instruct the jury as asked by defendant in its instruction number 8 that if plaintiff entered the train with the intention to ride without paying his fare he did not become a passenger, and the conductor had the right to remove him.  Higley v. Gilmer, 3 Mont. 90; Condran v. Railroad, 67 Fed. 522; Holt v. Railroad, 174 Mo. 524, 529.  (3)  The trial court erred in holding that though plaintiff entered the train with the intention not to pay fare, and though he refused to pay fare and defendant's conductor had stopped the train for the purpose of putting plaintiff off the train, still even then it was wrongful for said conductor to remove plaintiff if any one tendered said conductor plaintiff's fare.  Hoffbauer v. Railroad, 52 Ia. 345; Garrison v. Railways (Md.), 55 Ark. 371; People v. Jilson, 3 Park Cr. Rep. (N. Y.), 234; O'Brien v. Railroad, 80 N. Y. 236; Moore v. Railroad, 38 S. Car. 1; Railroad v. Johnson, 92 Ala. 204.  (4)  The petition in effect alleged that plaintiff tendered his fare to the conductor.  The proof was that he made no such tender.  A third party tendered the fare to the conductor, such proof did not sustain the allegation of the petition.

*N. A. Franklin, C. E. Murrell* and *Higbee & Mills* for respondent.

The case is identical with Randell v. Railway, 102 Mo. App. 342; Holt v. Railway, 174 Mo. 524; 3 Thomp., Neg., sec. 3215 and cases cited; Tangner v. Railway, 85 Mo. App. 32; Logan v. Railway, 77 Mo. 32; Johnson v.

Railway, 46 N. H. 223; Randell v. Railway, 102 Mo. App. 342.

ELLISON, J.—The plaintiff was put off of one of defendant's trains by the conductor and brakeman and claims to have been injured. The verdict was for five-hundred dollars compensatory damages. Punitive damages were not allowed.

The evidence in plaintiff's behalf showed that while under the influence of liquor he boarded defendant's passenger train at Greencastle intending to go to a station called Stahl, the distance being only a few miles. That the conductor called upon him for his fare and that he had neither money nor ticket. That he made a show of trying to find money or ticket in his pockets and not producing either, the conductor telling him he must pay or get off and on his continued failure to respond the conductor signaled the engineer to stop the train. That when the train was stopping the conductor and brakeman were forcing him to the platform and on getting onto the car steps as the train had about come to a stand on an embankment of about fifty feet in height, they violently pushed him from the step. That he struck the upper portion of the embankment and rolled to the bottom, whereby he received painful injuries. There was also evidence which, if believed, tended to prove that he thought he had a return portion of round-trip ticket from Stahl to Greencastle, but, in fact, did not have it.

The evidence in his behalf further tended to show a tender of his fare by an acquaintance, which the conductor refused with the words, "To hell with your money. You are too late." But it conclusively appears that no tender was made until after the failure to pay and after the conductor had given the signal to stop the train. The money for the tender was obtained from his acquaintance who was seated at the opposite end of the car and upon his attention being called to the scene

by the words between plaintiff and the conductor, he looked and saw the latter was then signalling for the train to stop by pulling the bell cord. He then gave money to be offered to the conductor which the latter refused.

There was evidence in defendant's behalf that plaintiff customarily tried to "beat" his way and had on several occasions severely taxed the patience of conductors by refusing to pay, by pretending to have no money, or to have lost a ticket, by making pretense to search his pockets for money or ticket, etc., and on the trip to Greencastle that day he had refused to pay until threatened. Several of plaintiff's important witnesses were asked by defendant on cross-examination, if they too were not in the habit of trying to "beat" the defendant out of the fare between the points named. The trial court sustained plaintiff's objection to questions of that character.

By instruction number 4, given for the plaintiff, and by instruction number 1, amending that asked by defendant, the trial court denied the defendant's right to put plaintiff off of the train if "before the conductor put him off" a passenger tendered the fare to the conductor. The law was thus stated to the jury without qualification, and we are of the opinion that it calls for a reversal of the judgment, since it amounts to a direction (the defendant's evidence considered) that a tender after the beginning of an effort at removal should be accepted, regardless of his intention and conduct in boarding the train. A wise, reasonable and just rule has been laid down in this State by Judge BOND of the St. Louis Court of Appeals and approved by the Supreme Court, that if a person boards a train *with the proper evidence of a right to be carried, or with the intention* of paying his fare, he becomes a passenger and that if there be, on his part, an honest misunderstanding as to his rights in the payment of his fare, or under his

125 App—22

ticket, or other evidence of right to carriage, he has a right to a reasonable parley with the conductor on that head. [Holt v. Railroad, 174 Mo. 524.] In that case, there was no doubt of the honest intention of the plaintiff and that he was wholly without fault and that he had become a passenger. Notwithstanding he was thus without blame, the conductor put him off. After steps had been begun looking to stopping the train for his removal, he tendered his fare which the conductor refused. The court said (italics ours): *"Under these special circumstances,* the subsequent actual tender of the money for his fare, if made before or during the process of expulsion by the conductor should have been accepted, and he should have been allowed to remain on the train." The Supreme Court remarked that the opinion of the St. Louis Court of Appeals correctly declared the law, "as applicable to the facts" of that case. In the case of Railroad v. Garrett, 8 Lea 438, the same good faith and honesty of intention existed in the passenger, there being no design to impose upon the carrier. A dispute arose between him and the conductor as to his right to be transported by reason of a certain certificate which he had. The conductor, as in the case to which we have just referred, was in the act of removing him, when a fellow passenger offered the fare which the conductor refused. It was held that he should have accepted it and the expulsion was therefore wrongful. But the court remarked that it was not deciding how it would be where the refusal to pay was captious or vexatious. So, in Clark v. Railway, 91 N. C. 506, it is stated that if a passenger, in good faith, has mislaid his ticket, or lost his pocketbook, or from other good cause is prevented from responding to the conductor's demand for fare, he should be allowed some opportunity to search for what is lost, or to seek other means of payment, such as, for instance, to borrow of a fellow passenger, unless these

acts involve an undue interference with other duties of the conductor.

But, the case last cited (and others to which we shall refer) declares the law to be, that when one wrongfully, without reasonable cause or just excuse, refuses to produce his ticket, or pay his fare, he *then* forfeits his rights as a passenger and may be expelled from the train; and that *after* the conductor has made a beginning in the acts of expulsion, a tender is too late to revive, or to establish the right to be considered a passenger. The same rule is stated in Garrison v. Railroad, 97 Md. 347, 353. And in Moore v. Railroad, 38 South C. 1, it is said that one who enters a coach without a ticket, on refusing to pay his fare becomes a trespasser *ab initio*. In Railroad v. Asmore, 88 Georgia 529, in speaking of the case of Railroad v. Nix, 68 Georgia 572, which it overrules, the court said: "Our conclusion is, that it is not sustainable either on principle or by sound authority, and we feel constrained to overrule it in so far as it lays down in universal and unqualified terms the proposition, or its equivalent, that a passenger by making a tender at any time before his ejection may acquire the right to remain on board and be carried. Whenever a passenger refuses to accede to a just and lawful demand made upon him by the conductor for the payment of his fare, after being allowed reasonable time and opportunity to comply, he renounces his right to the position and the privileges of a passenger, and subjects himself to expulsion from the train. If he changes his mind and tenders the fare before anything is done towards bringing the train to a stop in order to eject, him, his refusal will be retracted in time and his right to remain and be carried will stand unaffected. If he higgles and hesitates until he becomes a proper subject for ejection, and until steps have been taken to that end, he is too late. Any rule which would allow one passenger to play fast and loose

with the conductor would allow all the passengers to do so, and a train might thus be kept halting and alternating between running at ordinary speed and stopping throughout the whole of its journey, and to this embarrassment not only one train, but every train run for the carriage of passengers, would be exposed. See the observations of DENIO, J., in Hibbard v. Railroad, 15 N. Y. 455; Hutchinson on Carriers (2 Ed.), section 589." Further on in the opinion in that case the court makes a statement as to mistaken belief on the part of the passenger not altering his rights, which the courts in this State might not approve. The same law is stated, and for a like reason, in Hoffbauer v. Railroad, 52 Iowa 342. The court said: "The rule that a passenger may test the regulations of the company and the firmness of the conductor by refusing to pay full fare, and still save himself from expulsion by tendering full fare after expulsion had commenced, is not only uncalled for for the just protection of the recusant passenger, but would tend to encourage a practice which, if indulged in, would interfere with the convenience of the company, and the dispatch and quiet to which the other passengers are entitled." And the same rule is stated in O'Brien v. Railroad, 80 N. Y. 236.

It will be noticed that the case of Railroad v. Garrett, supra, like that of Holt v. Railroad, supra, in our Supreme Court, was where the passenger was actuated by the utmost good faith. But in a subsequent case in the Supreme Court of Tennessee, involving a different character of a plaintiff, that court stated the rule as it is very generally accepted in this country and drew the distinction between complainants wilfully at fault, and those with honest intentions. It was said: "If the plaintiff failed to pay his fare at the time, when, according to the regulations of the company, it should have been paid, and upon reasonable demand made therefor, he himself broke the contract, and could not insist

upon its fulfillment. And the weight of authority is that, in such case, he cannot, by tendering the fare, when he is being put off, or upon reentry after ejection, acquire a right to passage. . . ." And further on the court said: "The strict rule thus laid down ought, perhaps, to be confined to wilful violations of contract upon proper demand. It would not apply as we held in a recent case at Nashville (Railroad v. Garrett), where the passenger went on board under an honest belief that he could pay his fare in a particular form, and was unable to pay in any other way, and a tender was made by a third person on his behalf while he was being ejected. Nor will it apply where there was an honest, although mistaken assertion of right, when the tender was made by the passenger himself while quietly submitting to the legal right of the company to eject him. But the rule would exist only in name if a passenger who had wilfully violated his contract, and compelled the officer of the company to resort to force to remove him, were permitted to obtain the full benefit of the contract by a tardy and ungracious tender, made in a manner to disturb other passengers, and tending to a breach of the peace." [Railroad v. Harris, 9 Lea 180.]

The case of Holt v. Railroad, was, as already stated, certified from the St. Louis Court of Appeals. It was certified because one of the judges of that court deemed it to be in conflict with Perkins v. Railroad, 55 Mo. 201. But the Supreme Court concluded there was no conflict when the respective decisions were applied to the facts of each case. The Holt case determined in behalf of a plaintiff, with fair and honest motive, and whose conduct was in no respect in wilful disregard of the carrier's rules, that a tender after the beginning of the effort to put him off was sufficient to put the carrier in the wrong for persisting in his expulsion. The Perkins case, considering the instruction which was given as appears on page 210 of the report and the remarks of the

court thereon at page 211, announces the rule, in terms, that a tender of fare by a passenger after the conductor began to expel him is too late. But the latter rule, as thus flatly announced, must be considered in connection with the facts as conceded by the plaintiff in that case which are referred to at page 206 of the report, viz., that the plaintiff knew as he was entering the cars, that he had not sufficient money to pay his fare. With that knowledge he wilfully entered and took a seat in the car. It was doubtless a recognition by the Supreme Court, of a difference in the conduct of the respective plaintiffs in the Perkins and Holt cases that caused that court to conclude there was no conflict between them. Thus reconciled, the rule in this State is in harmony with the weight of authority, as we have endeavored to show it to be.

The defendant offered its instruction number 8, to the effect that if it was plaintiff's intention when he got upon the train not to pay full fare for his transportation, then he did not become a passenger. That part of the instruction was a correct statement of the law, and if it had not been made faulty by subsequent matter, it would doubtless have been given. [Lillis v. Railroad, 64 Mo. 465; Higley v. Gilmer, 3 Mont. 90; Gilbert v. Nagle, 118. Mass. 278.] But, as offered, the instruction went further and declared the right of the conductor to put him off, regardless of the place or manner of his removal, or the injuries he received. Though plaintiff may not have been a passenger entitled to carriage, and although the conductor may have had a right to remove him, yet he should not have done so in an unnecessary and harmful manner, and must not have inflicted injuries upon him beyond what were reasonably to be expected to result from a proper effort to expel him. [Randell v. Railroad, 102 Mo. App. 354; Tanger v. Railroad, 85 Mo. App. 28.]

It is suggested by defendant that the petition is

Gates v. Railroad.

based upon an unlawful removal of plaintiff from the car and yet no allegation of unnecessary force is made. We think a fair interpretation of the meaning of the petition shows the criticism not well made.

It is further suggested that the petition alleges that plaintiff became a passenger on the train and that after his fare had been duly tendered he was wrongfully ejected; while the evidence showed no offer of fare by him, but a tender by a third party without his solicitation. We may concede that a carrier is not obliged to enter into contractual relations with third parties in transacting its business with a passenger, and therefore is not obliged to accept a tender of fare for a passenger against his consent, or made without his knowledge; yet if the tender is made in behalf of the passenger in his presence or hearing and is not repudiated by him, it is reasonable to assume that his silence is an acceptance or acquiescence in the effort thus made in his behalf. In this case the tender, if made at proper time, was in the hearing and presence of plaintiff and we must assume with his consent.

From the foregoing it will be readily seen that the plaintiff has had his case presented to the jury in such way as to cut out many considerations appearing in evidence in defendant's behalf, which could well prevent his recovery. The record discloses that plaintiff being without money, had no right to be considered as a passenger, on the contrary he was a trespasser, unless he had theretofore purchased a round-trip ticket, the return portion of which he had not used, and which he, in good faith, thought he had in his pocket when he entered the train. And that unless that is believed, he had no right to the benefit of a tender made after the conductor had begun to stop the train. The jury should be made to understand the distinction between the rights of an honest man acting in good faith and those of a vexatious cheat who not only disarranges and disturbs

the carrier's business by trying to avoid payment of his fare, but who annoys and frequently delays the traveling public.

The judgment is reversed and cause remanded. All concur.