J. A. SHORT, Respondent, v. ST. LOUIS & SAN
FRANCISCO RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, July 12, 1910.**

1. CARRIERS OF PASSENGERS: Ejection of Passengers: Re-
fusal to Pay Fare: Statute Construed. Where a person boards
a railroad train, knowing at the time he is without valid trans-
portation thereon, or other means of paying his fare, and with
an intention to "beat his way," he is a mere trespasser and not
within the protection of section 1074, Revised Statutes 1899,
which provides that if any person shall refuse to pay his fare it
shall be lawful for the conductor to put him off at any usual
stopping place or near any dwelling house, for the statute ap-
plies to passengers only; but although a person is without a
ticket or means of paying his fare, if, in good faith, he honest-
ly believes he is possessed of proper transportation and enters
the conveyance with an intention to present his ticket or other-
wise pay his fare, he becomes a passenger and is within the
protection of the statute.

2. ———: ———: ———: Tender of Fare. The general rule
is, that unless a passenger tenders his fare, on demand, before
the process of ejection is commenced, a recovery will not be
allowed as for a wrongful ejection; but in this state a distinc-
tion is made between a mere offer to pay fare and a tender
thereof, and a mere offer to pay without an actual tender, af-
ter the process of ejection is commenced, is unavailing.

3. ———: ———: ———: ———. Though the conductor has
signaled the engineer to stop the train and commenced the
ejection of a passenger who merely offered to pay his fare, with-
out actually tendering it, the rights of such person may be
reinstated if he tenders payment before the ejection is com-
plete.

4. ———: ———: ———: Good Faith of Passenger: Jury
Question. In an action for wrongful ejection of a passenger
from a railroad train, his good faith in entering the car *held* to
be a question for the jury, under the evidence.

5. ———: ———: ———: ———: **Right to Parley with Conductor.** Where, before boarding a train, an ejected passenger presented his ticket to the brakeman, whose duty it was to inspect it, and was passed into the train as if he held valid transportation, and the ticket itself did not suggest otherwise, he was justified in believing that it was valid, and, so believing, he was within his legal rights when he parleyed with the conductor about the validity of his ticket and did not tender the money for his fare on the first demand.

6. ———: ———: ———: **Punitive Damages: Malice Presumed.** In an action against a carrier for wrongful ejection of a passenger, where the evidence tended to show that the conductor was rude and angry and that he and the brakeman ejected plaintiff with force before the train had come to a stop, the case was clearly one for punitive damages, as malice, insult and inhumanity might be inferred from these facts.

7. ———: ———: **Damages: Award of Actual and Punitive Damages not Excessive.** Where, in an action for ejection of a passenger who was not permanently injured, wherein it might have been found from the evidence that the conductor was rude and angry, and, with the brakeman, ejected plaintiff with force before the train actually came to a stop, and that plaintiff was slightly injured by a sprain in the hip, was compelled to walk over three miles to a station, and was delayed a day in reaching his destination, and, owing to the conductor's omission to return the ticket given him on the train, he was compelled to buy a new ticket at about $1.60, an award of $100 actual damages and $300 punitive damages was not excessive.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. F. Evans* and *Moses Whybark* for appellant.

(1)    Instruction number 2, given by the court for plaintiff, was not warranted by the evidence in the case. Plaintiff, himself, testified that it was necessary for the conductor do do what he did to get him off the train. The conductor employed no unnecessary force. Grayson v. Transit Co., 100 Mo. App. 60; Bolles v. Railroad, 134 Mo. App. 696; White v. Railroad, 132 Mo. App. 339; Hoffman v. Gill, 102 Mo. App. 320; Boling v. Railroad, 189 Mo. 219; Glover v. Railroad, 129

Mo. App. 563; Logan v. Railroad, 77 Mo. 663. (2) The compensatory damages in this case are excessive and not supported by the evidence. Smith v. Railroad, 127 Mo. App. 53; Ruth v. Transit Co., 98 Mo. App. 1; Helm v. Railroad, 98 Mo. App. 419; Glover v. Railroad, 129 Mo. App. 563. (3) The plaintiff was a trespasser on defendant's train at the time of the ejection. He boarded the train at Caruthersville intending not to pay his fare from Caruthersville to Hayti, and the conductor had the right to eject him at a point on the railroad not a usual stopping place nor near a dwelling.house. Sec. 1074 of Revised Statutes of 1899 does not apply in this case. Randolph v. Railroad, 129 Mo. App. 2; Lillis v. Railroad, 64 Mo. 464. The plaintiff had no right to resist at all, but it was his duty to leave the train peaceably. (4) The offer to pay the fare between Caruthersville and Hayti was made after the conductor proceeded to stop the train and the ejection had begun, and was too late to make him a passenger. Beck v. Railroad, 129 Mo. App. 7; Gates v. Railroad, 125 Mo. App. 334. (5) The plaintiff was not entitled to recover in this case, and the court should have sustained the demurrer to the evidence, but in any event the verdict is against the law and against the evidence, and manifestly the result of bias, and the court should have sustained the motion for a new trial for that reason if for no other.

*Ward & Collins* and *John A. Bradley* for respondent.

(1) A passenger is one who enters the vehicle of a carrier with the intention of paying in money the usual fare for his transportation, or who is supplied with a ticket or pass entitling him to ride to a given point. Holt v. Railroad, 174 Mo. 529; Gates v. Railroad, 125 Mo. App. 337; Beck v. Railroad, 129 Mo. App. 19; Liles v. Railroad, 64 Mo. 472. If plaintiff's ejection was

wrongful and entitled him to recover the actual damages sustained by him and if it was accompanied by unnecessary physical force and insulting language or by either, plaintiff was entitled to punitive damages. Bolles v. Railroad, 134 Mo. App. 705; Glover v. Railroad, 129 Mo. App. 571; White v. Railroad, 132 Mo. App. 346; Knight v. Railroad, 120 Mo. App. 327. The relation of carrier and passenger places the carrier under obligation to carry the passenger safely and treat him respectfully, and holds him responsible for the conduct of his servants, to whom he intrusts performance of his duty. He is bound to protect his passengers from violence and insult from strangers and co-passengers, and a fortiori against the violence and assault of its servants. Grayson v. Transit Co., 100 Mo. App. 71; Faber v. Railroad, 116 Mo. 91; Smith v. Railroad, 127 Mo. App. 53; Boling v. Railroad, 189 Mo. 238. (2) Where a passenger who is wrongfully ejected from the train by the conductor, sustains physical injury in consequence thereof, and the ejection is accompanied by unnecessary force or violence, willfulness or malice, or where the ejection is not made in good faith, under a mistaken belief of the conductor that the passenger is entitled to ride on the train, the passenger may recover compensatory damages not only for all the inconvenience, loss of time, labor and expense incurred by him in consequence of the wrongful act, but he may recover damages for the mental suffering and humiliation. Glover v. Railroad, 129 Mo. App. 571; Smith v. Railroad, 127 Mo. 60.

NORTONI, J.—This is a suit for damages alleged to have accrued on account of defendant's having wrongfully ejected plaintiff from its passenger train. Plaintiff recovered and defendant appeals.

It appears plaintiff purchased a ticket entitling him to first-class transportation over defendant's railroad from Senath to Cape Girardeau, Missouri, where he

was going to attend the normal school. He boarded the passenger train about ten o'clock in the forenoon and was conveyed to the town of Caruthersville where he waited a couple of hours for the train to Cape Girardeau. Upon the Cape Girardeau train coming into Caruthersville from Memphis, Tennessee, plaintiff boarded that train to complete his journey and tendered his ticket from Senath to Cape Girardeau but the conductor ejected him for the reason the ticket was not valid over that portion of the road between Caruthersville and Hayti. To more clearly understand the circumstances of plaintiff's ejection from the train, it will be necessary to recite that the main line of defendant's railroad runs in a general direction north from Memphis, Tennessee, to St. Louis, Missouri, and that the city of Cape Girardeau, plaintiff's destination, is north of Caruthersville on the main line of the railroad. Defendant also owns a short line of railroad, which is mentioned as a branch, but which is in fact a short line running east and west in a general course from the town of Senath to Caruthersville. This short line of railroad from Senath to Caruthersville crosses defendant's main line at the small town of Hayti, about six or seven miles west of Caruthersville. Caruthersville is a town of considerable importance, situate on the Mississippi river, and it appears that defendant's passenger trains from Memphis en route to St. Louis, on its main line through Cape Girardeau, depart from the main line at Hayti and proceed east over to Caruthersville, from whence they return to Hayti over the same track and proceed north to Cape Girardeau and St. Louis.

On boarding defendant's passenger train at Senath on its short line, plaintiff presented his ticket to the conductor and the conductor after having punched it, returned the ticket, saying to him, "You ought to change cars at Hayti." Plaintiff testified that as he had never made the particular journey before he

was not informed as to the details and, therefore, in reply inquired of the conductor if it would not be all the same for him to pass through Hayti, go to Caruthersville and board the train there for Cape Girardeau, and to this inquiry the conductor answered, "Yes;" that in accordance with this conversation he remained on the train until it reached Caruthersville and the conductor did not call upon him for any additional fare.    He waited at Caruthersville about two hours or until the train from Memphis en route for Cape Girardeau arrived, whereupon he entered one of the passenger cars to the end of completing his journey.

It is in evidence that a practice obtains on defendant's road to the effect that at each station the brakeman requires the presentation of tickets and passengers are admitted only after his examination thereof unless it be in exceptional circumstances where a person has reached the station too late to purchase a ticket for the train.    Plaintiff says he presented his ticket from Senath to Cape Girardeau to defendant's brakeman when he boarded the train at Caruthersville; that the brakeman examined it and passed him into the car as though it were proper transportation for the trip.    After the train proceeded from Caruthersville toward Hayti and about one-half way between those two stations, which appear to be six or seven miles apart, the conductor took up his ticket, punched it and requested fifteen cents additional fare.    Plaintiff inquired of the conductor what the additional fare was for and was informed that the ticket he held was not good over the six or seven miles of track between Hayti and Caruthersville.    Plaintiff at first declined to pay additional fare and parleyed with the conductor, insisting that it was his understanding the ticket was good by that route from Senath to Cape Girardeau and he says the conductor asserted the contrary.    Much testimony goes to the effect the conductor informed plaintiff abruptly that unless he paid the fifteen cents fare from Caruthersville to Hayti at once

he would put him off the train. Plaintiff says he there upon told the conductor that he was "no bum" and had money and was willing to pay his fare for those few miles but supposed his ticket was sufficient. Upon so saying, he put his hand in his pocket in order to take out some money, the conductor took hold of his arm, jerked him out of the seat and at the same time dislodged his hand from his pocket; that just at this time the conductor reached up and pulled the bell rope by which he signalled the engineer to stop the train. Plaintiff and several witnesses say that he told the conductor he would pay his fare before the conductor made the move toward pulling the bell rope to the end of stopping the train, but the conductor and others deny this and say that he made no such suggestion until he had been ejected to the platform of the car. Plaintiff and several other passengers gave testimony to the effect that after the conductor had thus dislodged plaintiff from his seat he and the brakeman pushed him forward, one on either side, through the aisle of the car on to the platform and from thence to the ground before the train had completely come to a standstill.

Plaintiff says that before the conductor had reached the car door in the process of ejecting him, he tendered him twenty-five cents in silver in payment of his fare. One or more of the passengers who were present say that he made a tender about this time. One of the witnesses says that plaintiff "begged" the conductor not to put him off the train as he had the money and was willing to pay his fare and it appears he had several dollars in money. There is testimony, too, that the conductor acted rudely as though he was angry and cursed the plaintiff while he was ejecting him. Upon being put off the car, plaintiff fell on his hands and knees on the earth and says he thereby injured his hip slightly. Some of the witnesses say the ejection was not near any farm house or station but those for defendant give testimony to the effect that plaintiff was put off at a way station

at a place where trains stopped on signals for passengers. On the part of defendant, the testimony tends to prove plaintiff was somewhat intoxicated and never at any time tendered the payment of his fare. It is said though he made a statement after he had been ejected from the car and on its platform to the effect that he had changed his mind and would pay if the conductor would not put him off. The conductor said he then told the plaintiff he had not changed his mind and as he had stopped the train he must get off. The evidence, too, on the part of defendant is that no one other than the conductor himself participated in ejecting plaintiff and it is said no unnecessary force nor opprobrious epithets were applied to him. The evidence preponderates to the effect that plaintiff was not intoxicated, if in liquor at all.

The principal argument for a reversal is that though plaintiff was ejected at a place other than a usual stopping place and not near a dwelling house, the fact was immaterial for the reason he was not within the protection of our statute. Our statute, section 1074, Revised Statutes 1899, section 1074, An. St. 1906, provides substantially that if any passenger shall refuse to pay his fare it shall be lawful for the conductor of the train to put him out of the cars, using no' unnecessary force at any usual stopping place or near any dwelling house as the conductor shall elect on stopping the train. Under this statute, the rule of decision is established to the effect that if one boards a train, knowing at the time he is without valid transportation thereon, or other means of paying his fare, and with an intention to "beat his way," he is a mere trespasser and not within the protection of the statute, for it applies to passengers only. [Lillis v. St. L., K. C., etc., R. Co., 64 Mo. 464; Beck v. Q. O. & K. C. R. Co., 129 Mo. App. 7, 108 S. W. 132.] But though one is without a ticket or other means of paying his fare, if he, in good faith, honestly believes that he is possessed of proper transportation

and enters the conveyance of the carrier with an in-
tention to present his ticket or otherwise pay the fare,
he thus becomes a passenger and is within the protec-
tion of the statute referred to. The rule which obtains
in this state is that the matter must be determined from
the intention of the patron of the carrier; for if an hon-
est man who had a ticket and had lost it but without
knowledge of the loss boards a train in good faith, he
ought to be regarded as a passenger within the pur-
view of the statute referred to so that his ejection at a
place other than those specified in the statute would be
wrongful. In other words, one thus acting in good
faith, with an honest intention, ought not to be de-
nounced as a trespasser and therefore wholly beyond the
pale of the statute designed for the protection of pas-
sengers. But it is different in the case of one intending
to "beat his way." [Gates v. Q. O. & K. C. R. Co., 125
Mo. App. 334, 343, 102 S. W. 50.]

However all of this may be, while of course plain-
tiff relies upon the statute, in a measure, he makes
no particular complaint with respect to the mere cir-
cumstances that he was put off the train at a place not
a usual stopping place or not near a residence, but in-
stead his grievance is that he was a passenger and,
therefore, wrongfully ejected, whereby he received a
slight personal injury and great humiliation, etc., and
was insulted as in circumstances of malice. The rule
which obtains generally is that unless the passenger
tenders his fare on demand, before the process of ejec-
tion is commenced, a recovery will not be allowed as
for a wrongful ejection. [2 Hutchinson on Carriers
(M. & D.), sec. 1085 (591a) ; 4 Elliott on Railroads
(2 Ed.), 1637.] But in this state, a distinction is
made by the courts between a mere offer to pay the
fare and a tender thereof. It is said that a mere
offer to pay fare without an actual tender made
after the process of ejection is commenced is unavailing,
but though the conductor has signaled the engineer to

stop the train and commenced the ejection of the passenger his rights may be reinstated if he actually tenders the payment of the fare before the ejection is complete. [Holt v. H. & St. Joe R. Co., 174 Mo. 524, 74 S. W. 631; Holt v. H. & St. Joe R. Co., 87 Mo. App. 203; Beck v. Q. O. & K. C. R. Co., 129 Mo. App. 7, 108 S. W. 132; Gates v. Q. O. & K. C. R. Co. 125 Mo. App. 334, 102 S. W. 50.]

In this case, if the evidence of the plaintiff and his witnesses is to be believed, the ejection was wrongful, for it appears that though he first parleyed with the conductor and in a quiet way asserted his understanding to be that the ticket was valid, he made an actual tender of the fare in money before he was ejected from the train and this of itself, under our law, suspended the right of the conductor to proceed further with the ejection and reinstated the plaintiff in his rights. For, after all, if plaintiff entered the car in good faith, honestly believing in his ticket, he was a passenger from the time he tendered his fare and entitled to all of the indulgences which the law accords to persons enjoying that relation. The question of his good faith, of course, is for the jury. [Holt v. H. & St. Joe R. Co., 87 Mo. App. 203; Holt v. H. & St. Joe R. Co., 174 Mo. 524, 74 S. W. 631; Gates v. Q. O. & K. C. R. Co., 125 Mo. App. 334, 102 S. W. 50; Beck v. Q. O. & K. C. R. Co., 129 Mo. App. 7, 108 S. W. 132.] That there is abundant evidence tending to prove plaintiff acted with the utmost good faith may not be controverted, for besides it appearing that he had paid for his transportation from Senath to Cape Girardeau, defendant's conductor on the other train had carried him from Hayti to Cape Girardeau without the payment of fare. Plaintiff says that though the conductor on the first train said he ought to get off at Hayti, he did not instruct him to do so and led him to believe that he could change either at that place or Caruthersville by carrying him free of fare between the two places. The conductor referred to

says he instructed plaintiff he could go to Caruthersville if he paid fifteen cents additional fare but that he omitted to collect any fare from him between Hayti and Caruthersville for the reason he overlooked it. The matter which obviously presented itself to plaintiff's mind in this situation was that he was permitted to ride. between the two points on the ticket he held as though it was valid for the purpose. Furthermore, before boarding the train at Caruthersville, he presented his ticket to the brakeman, whose duty it was to inspect it, and was passed into the train as if he held valid transportation from that place to Cape Girardeau. The ticket itself is not shown to suggest that it was not good between Hayti and Caruthersville. It is entirely clear plaintiff was justified in believing he had transportation over the portion of the road involved and the evidence of his good faith as to that matter amply supports the verdict. So believing, plaintiff was within his legal rights when he parleyed with the conductor about the validity of his ticket and was not required to tender the money on the first demand. [Holt v. H. & St. Joe R. Co., 87 Mo. App. 203; Holt v. H. & St. Joe R. Co., 174 Mo. 524, 74 S. W. 631.]

The instructions complained of submitted the case to the jury in accordance with the views herein expressed and we see no error contained therein. The evidence goes to show that the conductor was rude and evinced anger; that he and the brakeman together ejected plaintiff with force before the train had actually come to a stop. From these facts malice, insult and inhumanity may be inferred and if true the case is clearly one for punitive damages and whether they were true or not was for the jury to say. [Perkins v. M. K. & T. R. Co., 55 Mo. 201.] Plaintiff was slightly injured by a sprain in the hip, was compelled to walk over three miles to Hayti and delayed a day in reaching Cape Girardeau. He says, too, that he was compelled to buy

a new ticket from Hayti to Cape Girardeau at about $1.60 as the conductor omitted to return the ticket he gave him on the train. The conductor denies this, however, and for that reason we have omitted to treat with it in discussing the case but it should be considered on the matter of actual damages. It is true there was no permanent injury but we believe the award of one hundred dollars actual damages, when all of the circumstances of the case are reviewed, is moderate enough. The jury awarded three hundred dollars punitive damages only and defendant certainly has no grounds of complaint on that score. The judgment should be affirmed. It is so ordered. All concur.