# WILLIAM FORNOFF, Respondent, v. COLUMBIA TAXICAB COMPANY, Appellant.

### St. Louis Court of Appeals, December 31, 1913.

1. **APPELLATE PRACTICE: Binding Effect of Theory of Litigants.** In an action against a taxicab company, although there was no proof that it was a common carrier, yet, in view of the fact that the case was tried in the trial court and presented in the appellate court by both parties on the theory that it was a common carrier, the appellate court will dispose of it on the theory.

2. **CARRIERS OF PASSENGERS: Protection of Passengers: Duty of Carriers.** A passenger is entitled to proper and decorous treatment from the carrier during the course of his transportation, and the carrier is liable if its servants assault or insult him during such time.

3. **———: Evidence of Relation.** The mere fact that a passenger leaves the conveyance during the transit does not, in and of itself, terminate the relation of the parties, provided he does so for a proper purpose, and especially is this true if he leaves the conveyance only temoparily, with the consent of the carrier's servant in charge.

4. **———: ———: Assault of Passenger: Right of Recovery.** Where a passenger in a taxicab of a common carrier entered a business establishment to procure change with which to pay the driver, and the driver followed him for the purpose of collecting the fare, the relation of passenger and carrier continued to exist, so that the carrier was liable for an assault committed on the passenger by the driver under such circumstances.

5. **———: Creation of Relation.** Where one takes passage on the conveyance of a common carrier with a purpose to beat his way, he is a mere trespasser and is not entitled to the care and protection due a passenger.

6. **———: Existence of Relation: Action for Assault: Instructions.** In an action for an assault alleged to have been committed on a taxicab passenger by the driver, where there was evidence that plaintiff entered the taxicab with the intention of refusing to pay fare, it was error to refuse instructions requested by defendant, predicated on such evidence, presenting the issue that the relation of carrier and passenger never existed, and was error to give instructions for plaintiff as-

suming that the mere engagement of the taxicab by plaintiff created that relation and ignoring the evidence tending to prove that plaintiff never intended to pay fare.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillen,* Judge.

REVERSED AND REMANDED.

*Ryan & Thompson* for appellant.

(1) The distinction between a cause of action founded upon a breach of duty incident to the relation of carrier and passenger and a cause of action against the master for the tort of a servant while acting within the scope of his employment, is well marked and has been consistently observed by the appellate courts of this State. One will not be permitted to sue upon a cause of action arising out of alleged breach of duty incident to the relation of carrier and passenger, and recover for the violation of a duty growing out of the relation of master and servant. Ramings v. Railroad Co., 157 Mo. 477; Farber v. Railroad, 116 Mo. 81; McPeak v. Railroad, 128 Mo. 617; Snyder v. Railroad, 60 Mo. 413; Keen v. Railroad, 129 Mo. App. 301; McDonald v. Railroad, 165 Mo. App. 75. (2) At the time the assault occurred plaintiff had ceased to be defendant's passenger. This is true whether the contract of carriage was as testified by the plaintiff, or as testified by the defendant. Grayson v. Transit Co., 100 Mo. App. 73; McDonald v. Railroad, 165 Mo. App. 75; Neuer v. Railroad, 143 Mo. App. 407; Senf v. Railroad, 112 Mo. App. 74; Ickenworth v. Transit Co., 102 Mo. App. 597; O'Brien v. Same, 185 Mo. 263; McQuerry v. Railroad, 117 Mo. App. 255; Flynn v. Transit Co., 113 Mo. App. 185; Devoy v. Same, 192 Mo. 210. (3) The defendant cannot be held liable upon the theory of master and servant, that is, upon the theory that the servant com-

mitted the tort while acting for the master within the scope of his employment. This for two reasons: (a) Because this is not the cause of action alleged, nor was the case tried below upon that theory, and (b) because the defendant is not liable for the conduct of its servant who assaults a person, not a passenger, because that person refuses to pay his cab hire. A servant with authority to collect for defendant has not authority to arrest the debtor for refusal to pay. Grayson v. Transit Co., 100 Mo. App. 60; Dwyer v. Same, 108 Mo. App. 152; Collette v. Revori, 107 Mo. App. 711; Milton v. Railroad, 193 Mo. 46; McDonald v. Railroad, 165 Mo. App. 75; Drolshagen v. Railroad, 186 Mo. 258; Farber v. Mo. Pac., 32 Mo. App. 378, 116 Mo. 81; Kruger v. Railroad, 84 Mo. App. 385.

*George V. Reynolds* for respondent.

(1) The relation of carrier and passenger ceases only when the passenger has departed from the car and had a reasonable time to avoid further danger from the operation of the car, or further necessity of relation with the servants of the carrier. 6 Ency. of Law and Pr. p. 542. As against the assaults and violence of his servants the passenger has the right to claim absolute protection and the carrier will undoubtedly be held responsible for any unnecessary personal abuse or violence of which they may be guilty in their treatment of the passenger while engaged in the discharge of their assigned and appropriate duties although such abuse may consist in an assault or battery upon the person of the passenger and may be wholly unauthorized by the carrier and prompted by the vindictive feelings of the servant towards the passenger. 2 Hutchison on Carriers, Sec. 1093, p. 1274. The carrier must not only protect his passenger against the violence and insults of strangers and co-passengers, but *a fortiori* against the violence and in-

sults of his own servants. If this duty to the passenger is not performed; if this protection is not furnished; but, on the contrary, the passenger is assaulted and insulted through the negligence or willful misconduct of the carrier's servant, the carrier is necessarily responsible. And it seems to us it would be cause of profound regret if the law were otherwise. The carrier selects his own servants and can discharge them when he pleases, and it is but reasonable that he should be responsible for the manner in which they execute their trust. 2 Hutchison on Carriers, Sec. 1094, p. 1278. (2) The court will not pick out one single instruction for critical examination, but will read all of the instructions given in a case. If the instructions taken as a whole and read altogether properly declare the law the court will not reverse or remand for minor imperfections in any instruction. McKeon v. Citizens Ry. Co., 43 Mo. 405; Muchlhausen v. Railroad Co., 91 Mo. 332; Yocum v. Town of Trenton, 20 Mo. App. 489; Boler v. Cohen, 42 Mo. App. 97.

NORTONI, J.—This is a suit for damages said to have accrued to plaintiff through an assault upon him by defendant's chauffeur. Plaintiff recovered and defendant prosecutes the appeal.

The suit proceeds against defendant on the theory that it is a common carrier of passengers and as though plaintiff was a passenger at the time the assault was made upon him by the chauffeur. The important question for consideration in the case relates to this matter. There is no evidence in the record tending to prove the nature of defendant's calling. Neither is it admitted to be a common carrier of passengers. However, as the case proceeded to judgment as if defendant were such a carrier and is argued and presented here by both parties on that theory, we will dispose of it accordingly.

It appears that plaintiff and his companion, O'Shea, spent the evening in a saloon at the corner of Euclid and McPherson avenues in St. Louis and were drinking more or less during the time. Near or about midnight, plaintiff telephoned for a taxicab to call there for him and his companion. Upon the arrival of the cab, plaintiff and O'Shea entered it, instructing the chauffeur, according to the evidence of plaintiff, to transport them from that point—that is, Euclid and McPherson avenues—to 4261 Page avenue, where O'Shea resided, and from thence to 4222 McPherson avenue, the residence of plaintiff. Plaintiff, it appears, called the taxicab into service and instructed the chauffeur with respect to their destination. According to plaintiff's evidence, the purpose was to transport his companion, O'Shea, to his residence at 4261 Page avenue and from thence transport plaintiff to his home at 4222 McPherson avenue. Such is the contract of carriage set forth in the petition and that relied upon at the trial by plaintiff. However, defendant's chauffeur says no such instructions were given; that, on the contrary, the transportation was engaged to "some good saloon" over about Delmar avenue, which was some four or five blocks distant from the point of starting. At any rate, the chauffeur transported plaintiff and his companion to Allen's saloon on the northeast corner of Delmar and Euclid avenues, only a few blocks from the starting point. Upon arriving there, plaintiff says the chauffeur stopped the cab, alighted therefrom and opened the door thereof, requesting payment of the cab fare, fifty cents. Plaintiff testifies that he insisted the chauffeur should complete the journey to 4261 Page avenue and from thence to 4222 McPherson avenue, when the fare would be fully paid. The chauffeur insisted the fare of fifty cents must be then paid and that he would not further proceed until it was. Thereupon, plaintiff offered the chauffeur either a ten or

twenty dollar bill, of the exact denomination he is not certain, and the chauffeur was unable to make the change. Because of this fact, plaintiff alighted from the cab and with the chauffeur entered Allen's saloon at the northeast corner of Delmar and Euclid avenues with a view of procuring change for the bill, paying the cab fare and proceeding on the journey. The hour of midnight had arrived and the saloon was being closed. Both the proprietor and the bartender declined to make change for plaintiff or to sell him a drink through which transaction the change might be procured. Thereupon plaintiff went out of the saloon and crossed the street with a view of procuring the change in Cicardi's saloon, on the opposite corner—that is, the northwest corner of Delmar and Euclid avenues. Defendant's chauffeur followed plaintiff from Allen's saloon across the street and, it is said, was insisting on the payment of the fare in the meantime. Just before plaintiff reached Cicardi's saloon and while he was yet in the street and about to step upon the sidewalk, the chauffeur assaulted plaintiff, leveling a blow upon the back of his head with such force as to render him unconscious. The damages sued for result from the injury thus received, and the relation of passenger and carrier is both counted upon in the petition and carried into the instructions throughout the case, as if defendant failed in its duty to protect plaintiff, its passenger, from the assault of its servant during the transit.

On the part of defendant, the chauffeur testifies that plaintiff took passage in the taxicab to be transported only from the corner of Euclid and McPherson avenues to "some good saloon" over about Delmar avenue and that he was so transported and discharged there at Allen's saloon; that, though he struck him thereafter, he did so because plaintiff was intoxicated and rude and repeatedly suggested that he had

179 App. 40

never paid a taxicab fare in his life and did not intend to do so, and furthermore because plaintiff first assaulted him. The chauffeur says that, upon arriving at Allen's saloon, plaintiff and his companion alighted from the cab, and he immediately demanded the fare of fifty cents, but plaintiff parleyed with him about it, told him to collect it from O'Shea, saying, substantially, that he never had paid, and never would pay, a cab fare. In seeking to collect the fare, the chauffeur says he followed plaintiff into Allen's saloon and, when he applied for a drink, heard the bartender tell him, "Nothing doing," whereupon plaintiff and his companion departed and crossed the street to Cicardi's saloon. After having repeatedly demanded the fare, and its payment being as often declined or deferred, at least, as if plaintiff had no intention of paying it, and this too, with rude remarks on the part of plaintiff, the assault was made.

By the instructions given at the instance of plaintiff, the court authorized a verdict for him against defendant as if it is a common carrier of passengers and as if plaintiff was a passenger and within its care and protection at the time the assault was made. The court instructed that if plaintiff engaged one of defendant's taxicabs to convey him to a certain point of destination and defendant's chauffeur in charge of such taxicab, without sufficient cause or provocation therefor, in attempting to collect plaintiff's fare, assaulted and struck him, then a recovery might be had against defendant on account of such assault. This instruction proceeds as though the mere fact that plaintiff engaged the taxicab to transport him to a "certain point of destination," without naming it, not only created the relation of passenger and carrier between the parties so as to place plaintiff within its protection, but continued that relation even when plaintiff was assaulted by the chauffeur in the street, and it omits entirely to reckon with the testimony of

the chauffeur that he had transported plaintiff and discharged him at the end of his journey where he declined to pay the fare. Obviously this and other instructions for plaintiff which so treat with the facts in judgment inhere with error, for if plaintiff had no intention of paying the fare when he entered the cab, or thereafter, then the relation of passenger and carrier did not obtain at all between the parties. If the contract of carriage is as plaintiff asserts it to be—that is, from the corner of McPherson and Euclid avenues to 4261 Page avenue and from thence to 4222 McPherson avenue—then plaintiff was a passenger at the time he was assaulted, for the transportation was not nearly completed at Euclid and Delmar avenues where the cab was stopped, the controversy arose, and the assault made.

There can be no doubt that the passenger is entitled to proper and decorous treatment from the carrier and its servants during the course of transportation, and this involves an assurance that such servants in charge of the conveyance will neither assault nor insult him. [Elliott on Railroads (2 Ed.), Sec. 1592; Keen v. St. Louis, I. M. & S. R. Co., 129 Mo. App. 301, 108 S. W. 1125.] Therefore, if the chauffeur stopped the cab, as testified by plaintiff, during the transit and demanded the payment of fifty cents fare or a payment of fifty cents on the fare and plaintiff alighted therefrom, going into Allen's saloon and from thence toward Cicardi's saloon, with a view of obtaining the change to pay it, the relation of carrier and passenger obtained during that time. The mere fact that a passenger leaves the conveyance during the transit does not in and of itself terminate the relation of the parties, provided he does so for a proper purpose. Especially is this true when he takes his leave temporarily from the conveyance with the consent of the carrier's servant in charge. For instance, it is said that where the passenger leaves the convey-

ance for a temporary purpose only, the relation of passenger and carrier continues to protect him, provided his purpose in leaving the train is connected with his journey and he remains on the premises of the carrier. [See Elliott on Railroads (2 Ed.), Sec. 1592; Missouri, K. & T. R. Co. v. Overfield, 19 Tex. Civ. App. 440, 47 S. W. 684; Hrebrik v. Carr, 29 Fed. 298; Parsons v. New York, etc. R. Co., 113 N. Y. 355; 5 Am. & Eng. Ency. Law (2 Ed.), 499, 500.] In this view, it is said the relation of passenger and carrier continues to protect the passenger who temporarily leaves the conveyance for the purpose of sending a telegram pertaining to his private business, when such telegram is transmitted at the carrier's depot. [Clussman v. Long Island R. Co., 9 Hun. (N. Y.), 618; Dice v. Willamette Transportation, etc., Co., 8 Ore. 60.] So, it is proper enough for a passenger to leave the train for the purpose of procuring a meal, and the relation of carrier and passenger continues to protect him while on the premises of the carrier and about the conveyance for that purpose. [Dodge v. Boston, etc. Steamship Co., 148 Mass. 207; Jeffersonville, etc. R. Co. v. Riley, 39 Ind. 568. See, also, to the same effect Laub v. Chicago, B. & Q. R. Co., 118 Mo. App. 488, 94 S. W. 550.]

It appearing that, according to the testimony of plaintiff, he alighted from the cab only temporarily to procure change, which the chauffeur was unable to make, and compensate the carrier for the fare with a view of continuing the journey, it is clear enough that he should be regarded as within the care of the carrier during the time. Obviously he had neither completed the journey nor was he yet discharged by the carrier. This is true though plaintiff entered one saloon and failed to procure the change and was en route to another when assaulted, for it appears the chauffeur either accompanied or followed him with a view of collecting such fare, and this fact alone continues the

relation as if plaintiff were on the carrier's premises, for it is clear he was not discharged but remained in its care through the presence of the chauffeur who attended his movements.

Moreover, even though the contract of carriage is as defendant's chauffeur testified, which involved only the transportation to Allen's saloon, it would seem that the principle involved in the obligation of the carrier to protect its passengers from the assaults of its own servants finds a just application here. We say this because the necessity for the continued relation of carrier and passenger existed at the time the assault was made—that is, in and about the collection of the fare for the transportation. It is true that if plaintiff had no intention of paying his fare, another question arises. But assuming that he entered the cab in good faith, intending to pay, and that he was in company with the chauffeur, earnestly endeavoring to procure change for the bill to the end of compensating defendant for the carriage to the place at which he alighted, it would seem that he was entitled to the protection and care of the carrier against the assault of such chauffeur during all of that time, and this is true even though they had passed from the cab into one saloon and then crossed the street to another. In such circumstances, it appears that the necessity for further relations with the carrier's servant continued while plaintiff was thus seeking change to pay the fare and with a view of being finally discharged therefrom by the carrier, whose chauffeur accompanied him during the time. When the relation of passenger and carrier is established, the passenger surrenders himself into the care and custody of the carrier. This implies an obligation on the part of the carrier not only to transport the passenger to destination, if he properly deports himself, but to discharge him on arrival free from assault on the part of its servants, that is in the proper manner. The mere

stepping of the passenger from the vehicle into the street at the end of his journey is not enough to acquit this obligation, for the passenger is to be discharged and protected from assault by the servants while being discharged by the carrier. Even though the journey was ended, plaintiff was not discharged by the carrier at the time the assault was made upon him. [See Van Hoefen v. Columbia Taxicab Co., 179 Mo. App. 591, 162 S. W. 694 (decided today); Ormand v. Hayes, 60 Tex. 180; 6 Cyc. 541, 542; Gaynor v. Old Colony, etc. R. Co., 100 Mass. 208; Burnham v. Wabash, etc. R. Co., 91 Mich. 523-525; 5 Am. & Eng. Ency. Law (2 Ed.), 499.]

But though such be true, the record abounds with evidence tending to prove that, although plaintiff engaged the taxicab and was transported in it, the relation of passenger and carrier did not obtain at all. We say this in view of the fact, first, that it appears plaintiff actually paid no fare whatever. Moreover, it appears from the testimony of the chauffeur that he refused to pay and repeatedly stated he had never paid a cab fare in his life and did not intend to do so. The chauffeur says, too, plaintiff insisted that he should drive him around during the night without a charge therefor and that they would have a good time together, etc. It is entirely clear that this evidence tends to prove plaintiff did not intend to pay his fare at the time he entered the cab or at any time thereafter. The chauffeur denies that plaintiff was endeavoring to obtain change with a view of paying the fare, and says he was seeking to buy a drink only and this was refused to him by the proprietor of the saloon and the bartender. The rule is well established in this State to the effect that where one takes passage upon the conveyance of a common carrier with a purpose to "beat" his way and intending at the time not to pay the fare and thereafter refuses to do so, he is to be regarded as a mere trespasser and not entitled

to the protection which inheres in the relation of passenger and carrier. [Beck v. Quincy, O. & K. C. R. Co., 129 Mo. App. 7, 108 S. W. 132; Lillis v. St. Louis, etc. R. Co., 64 Mo. 464; Short v. St. Louis, etc. R. Co., 150 Mo. App. 359, 130 S. W. 488; Gates v. Quincy, etc. R. Co., 125 Mo. App. 334, 102 S. W. 50; see, also, 5 Am. & Eng. Ency. Law (2 Ed.), 496.] It is obvious that if plaintiff did not intend to pay his fare and continued to refuse to pay it, as the chauffeur testifies, then he was not a passenger at all and, therefore, not entitled to the care and protection which obtains in that relation and invoked here as a predicate for recovery. Though requested to instruct the jury on this feature of the case, the court declined to do so, and this of itself should occasion a reversal of the judgment, for, on the facts in the record, the proposition of law thus adverted to is highly important to defendant and should be given to the jury as a guide.

However, the instructions for plaintiff are erroneous for the reasons above pointed out in that they omitted as well to reckon with the feature of the case last referred to. The judgment should be reversed and the cause remanded. It is so ordered. *Allen, J.,* concurs. *Reynolds, P. J.,* not sitting.

