[No. 7448.  Decided July 11, 1908.]

# H. J. MILLS, *Respondent*, v. SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY, *Appellant*.[1]

CARRIERS—PASSENGERS—TAKING WRONG CAR—TRANSFERS—TICKETS—TRESPASSERS—EJECTION—OPERATION OF STREET CARS—PERFORMANCE BY CARRIER. Where a passenger by mistake and without fault of the company boarded a street car having placards indicating that it ran only to a point two miles short of his destination, with a ticket of a form common to several stations entitling him to ride over the line to his destination, he is not entitled to a transfer upon the car's reaching the end of its run, contrary to rules of the company; since the company is not bound to run all its cars the entire length of its line or provide transfers from one car to another; and upon refusing to leave the car at the end of its run the passenger becomes a trespasser and cannot recover for ejection.

SAME—TRESPASSERS—EJECTION—ASSAULT. A street car company is liable to a passenger who had become a trespasser, if ejected while the car was in motion so as to endanger life or limb, or if willfully assaulted with unnecessary force by the conductor.

SAME—TRESPASSERS—ASSAULT—BY SERVANT—SCOPE OF EMPLOYMENT. A street car company is not liable to a passenger who had become a trespasser, for an assault committed by one employed as a greaser, who had nothing to do with the operation of the cars, while attempting an ejection from the car, unless the greaser was assisting the conductor and used more force than was necessary; since the ejection was outside the scope of the greaser's employment.

Appeal from a judgment of the superior court for King county, Griffin, J., entered December 14, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a passenger ejected from a street car. Reversed.

*Sachs & Hale*, for appellant.

*John E. Ryan*, for respondent.

RUDKIN, J.—The defendant owns and operates a line of electric railway between the city of Seattle and the town of Renton, in King county. Cars starting out from the city of

[1]Reported in 96 Pac. 520.

Seattle run to different points or stations on the line of the road, such as Graham Avenue, Ocean Beach, Rainier Beach, and Taylor's mill. Each car has a notice at the front and rear of the car showing its destination. The five cent fare limit is Graham Avenue. Beyond this point tickets to Seattle and return are sold by the conductors on the several cars. Return trip tickets are not sold to each individual station or stopping place, but one general form of ticket is used for all stations to which the rate or fare is the same, and the tickets are good to the farthermost station from the city of Seattle. Thus, passengers purchasing tickets to Seattle and return from Brighton Beach, Ocean Beach, and Rainier Beach, will all receive the same form of ticket, and there is nothing on the face of the ticket to mark or indicate the passenger's destination.

On the morning of March 25th, 1907, the plaintiff in this action took passage on one of the defendant's cars at Rainier Beach, and purchased a ticket to Seattle and return. On the evening of that day he boarded another of the defendant's cars at the city of Seattle for the return trip to Rainier Beach. The notice at the front and rear of the car thus boarded showed that the destination of the car was Ocean Beach, a point about two miles nearer Seattle than Rainier Beach, and such was its destination in fact. No questions were asked by the plaintiff as to the destination of the car and no information was given by him as to his own destination. The conductor took up the tickets, and when the car reached Ocean Beach the plaintiff was informed that the car had reached its destination and was about to return to the barn, and that he, the plaintiff, must leave the car. The plaintiff refused to leave the car, but demanded from the conductor a transfer or other evidence of his right to take another car to his destination at Rainier Beach. This the conductor refused to give, and had no authority to give under the rules of the company. After remaining at Ocean Beach

for about five minutes the car started back towards the barn with the plaintiff still on board. Up to this point there was no conflict in the testimony, and no question of fact for the jury to pass upon. When the car had returned to a point near Brighton Beach, about two miles from Ocean Beach, a conflict arose between the plaintiff and the conductor of the car, or a greaser in the employ of the defendant, or between the plaintiff and both the conductor and the greaser, as a result of which the plaintiff was ejected from the car and assaulted. This action was instituted to recover damages for the wrongful ejectment and for the assault; and from a judgment in favor of the plaintiff, the present appeal is prosecuted.

The following instruction, and others of like import, defining the relative rights and duties of common carriers and their passengers, were excepted to, and the giving of these instructions is assigned as error:

"I instruct you, gentlemen of the jury, that if you find from a fair preponderance of the evidence in this case, that the plaintiff, on or about the 25th day of March, 1907, had in his possession a ticket entitling the plaintiff to ride as a passenger upon one of the defendant's cars from the city of Seattle to Rainier Beach, and that it was printed upon the face of the ticket that the plaintiff was entitled to passage from the city of Seattle to Rainier Beach, and if you further find that he went in the car of defendant in good faith believing that he was entitled to ride upon the car of defendant upon which he entered as a passenger from the city of Seattle to Rainier Beach, then he became a passenger of defendant from the city of Seattle to Rainier Beach for hire and was entitled to be transported by defendant as a passenger, and was entitled to all the rights and duties and privileges of a passenger for hire upon that street railway line from the city of Seattle to Rainier Beach."

These several assignments must be sustained. The appellant was not required to run all of its cars the entire length of its line, nor to provide for the transfer of passengers from

one car to another.  It might run its cars to such points or stations as would best subserve its own convenience and the convenience of the traveling public, and require passengers to take such cars only as would transport them to their destination without change.  This the appellant did and no more. The respondent took the wrong car by mistake, without fault on the part of the appellant or its agents, and for this mistake and the injury flowing therefrom he alone is responsible. As soon as the car destined for Ocean Beach had reached its destination, and the respondent was informed of that fact and requested to leave the car, it was his duty to do so, and as soon as he was given a reasonable opportunity to leave the car and refused, the relation of carrier and passenger ceased and the respondent became a trespasser from that time forward.  The appellant thereafter owed him such duty as it owes to trespassers and none other, and these facts appearing from the uncontroverted testimony, the court should have so charged the jury.  These errors call for a reversal of the judgment, but not for a dismissal of the action.  As a trespasser, the employees of the appellant might use such force as was reasonably necessary to eject the respondent from the car, in case he refused to leave of his own accord, but they could not lawfully eject him while the car was in motion, so as to endanger life or limb, nor could they wilfully or unnecessarily assault him with impunity.  The rights of common carriers and their employees in ejecting trespassers from cars were thus stated in *Clark v. Great Northern R. Co.*, 37 Wash. 537, 79 Pac. 1108:

"The rule is that, in removing trespassers from a train, the employees of the company may use such force as appears reasonably necessary, under all the circumstances, to accomplish the end in view; and, if the trespasser offers forcible resistance, a jury should not weigh with too much nicety the degree of force resorted to."

In this case there was some testimony tending to show that a wilful and unprovoked assault had been committed, and the

weight of this testimony was for the jury. The appellant requested the court to charge the jury that it was in no event liable for the assault committed by the employee called the greaser. This employee had nothing to do with the operation of the cars or with the receiving or discharging of passengers, and for an assault committed by him of his own volition and without the scope of his employment, the company of course would not be liable. If, on the other hand, this employee was assisting the conductor in ejecting the respondent from the car, at the express or implied request of the conductor, the appellant would be liable for his acts in that connection.

The other assignments are not of sufficient importance to call for consideration or discussion, but for error in the instructions complained of, the judgment is reversed and the cause remanded for a new trial.

HADLEY, C. J., FULLERTON, MOUNT, ROOT, DUNBAR, and CROW, JJ., concur.