[No. 8542.  Department One.  May 5, 1910.]

## JOHN W. KIRK, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

CARRIERS — OF PASSENGERS — WRONGFUL EJECTION — ASSAULT — ACTIONS—PLEADING—SEVERAL CAUSES. In an action by a passenger for wrongful ejection from a street car, a demurrer to the complaint on the ground that several causes of action are improperly united is properly overruled where but one cause of action is pleaded—that for assault, although it is also alleged that plaintiff was arrested after the assault.

CARRIERS—STREET CARS—RULES—REASONABLENESS—DISOBEDIENCE —EFFECT. The rule forbidding passengers to ride upon the front platform of a street car is reasonable, and a passenger who on notice refuses to obey the rule, until the car is run into the car barn and other passengers are transferred to another car, forfeits his right as a passenger and is not entitled to a transfer or to ride on the second car without paying another fare.

SAME — RIGHTS OF PASSENGERS — TRANSFERS — FORCE — TESTING RIGHTS. A passenger on a street car, denied the right to a transfer or to a ride on a second car without paying another fare, is not justified in inviting the application of force to eject him, but it is his duty to withdraw and test his right in the courts.

SAME—EJECTION OF PASSENGER—FORCE NECESSARY. Where a passenger refuses to pay his fare on a street car, the conductor may eject him, using no more force than is necessary, the amount of force necessary being measured by the force of the resistance offered, in which case the same will not be weighed with nicety.

SAME—FAILURE TO PAY FARE—OFFER BY THIRD PERSON—REPUDIATION. A passenger ejected from a street car for refusal to pay his fare cannot, in an action for wrongful ejection, avail himself of offers made by other passengers to pay the fare, where at the time he expressly repudiated the offers.

SAME—REFUSAL TO PAY FARE—TENDER AFTER EJECTION. After the process of ejection for refusal to pay has begun, either by stopping or applying force, it is too late for the passenger to offer to pay, and the same is no justification for resisting the ejection.

EVIDENCE—OPINION EVIDENCE—ASSAULT. In an action for assault in the ejection of a passenger from a street car, evidence of expressions of sympathy on the part of his fellow passengers, is incompetent and inadmissible as opinion evidence.

[1]Reported in 108 Pac. 604.

WITNESSES—IMPEACHMENT—COLLATERAL MATTERS. In an action for assault in the ejection of a passenger from a street car, the motorman cannot be impeached in regard to testimony as to his age, drawn out on cross-examination, as it was a collateral matter.

EVIDENCE—OPINION EVIDENCE—EXTENT OF DAMAGE. In an action for assault, it is error to allow the plaintiff to give his opinion of the monetary extent of his damages.

DAMAGES — PERSONAL INJURIES — PROXIMATE CONSEQUENCES—EXPENSE ITEMS. In an action for an assault, expenses of the plaintiff and his wife while traveling over the country for over a year, including fares, meals, berths, and board bills, are not damages naturally and proximately flowing from the injuries, except as advised by his physician as necessary and proper elements in his recovery, and then only as to items which would not be included in necessary expenses had he remained at home; and items for his wife's expenses only in case he could not travel without her.

SAME—LOSS OF PROFITS—DIMINISHED EARNING CAPACITY. In an action for injuries sustained in an assault, estimates of profits and commissions in the business of getting out special editions of newspapers, the commissions depending upon the financial success of the ventures, are too remote and speculative to be recoverable; the proper element of damage being the diminution of plaintiff's earning capacity determined by what he was capable of earning before and after the injury.

Appeal from a judgment of the superior court for King county, Tallman, J., entered June 24, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for injuries sustained by an assault. Reversed.

*James B. Howe* and *A. J. Falknor*, for appellant.
*Charles A. Riddle* and *Wm. M. Watson*, for respondent.

MORRIS, J.—In this action respondent sought damages for injuries sustained in an assault, claimed to have been committed upon him October 2, 1907, by appellant's servants in charge of its car No. 530. The theory of the complaint is, that respondent was a passenger, having paid his fare upon car No. 311; that the passengers upon car 311 were transferred to car 530 and transfers issued to them, but that a transfer was refused respondent and, upon entering the second car, he became entitled to carriage without additional

payment of fare. The conductor of the second car refused to carry him without a fare, and when payment was refused, he alleges he was set upon by the conductor and motorman and severely beaten. He also sets forth that, at the request of the conductor of the second car, he was arrested and taken to the police station, where, no charge being made against him, he was discharged.

The answer sets forth a rule of the company forbidding passengers from riding upon front platforms of cars; that respondent refused to obey such rule when his attention was called to the same, but insisted upon remaining upon the front platform, and that the car was finally run into appellant's car barn and all the passengers thereon transferred to the second car, except appellant who was refused a transfer, upon the theory that, having violated a reasonable rule of the company and refusing to abide thereby, he forfeited his rights as a passenger and was not entitled to a transfer upon car 530; that immediately upon entering the second car, he was informed that he could not ride thereon without the payment of fare, which he refused, and the employees of the company thereupon undertook to eject him, using no more force than was necessary for that purpose, and being unable to do so, called a policeman to remove him. This affirmative matter being denied, the case went to the jury upon the issues thus raised, and a verdict was returned awarding respondent $6,609. A new trial being denied, the case is brought here for review.

Many questions are presented upon the appeal, it being contended, first, that a demurrer should have been sustained to the complaint, upon the ground that several causes of action were improperly united. There was but one cause of action pleaded—that for assault. The allegation of the subsequent arrest was no part of this cause of action, nor was it the setting forth of a second cause of action. Had the complaint been moved against upon this ground, the reference to the subsequent arrest would doubtless have been stricken.

It was, however, good as against a demurrer, in that it was not set forth as an independent cause of action and then improperly united with the first cause of action pleaded.

Upon the main issue involved, as to the relative rights of the parties, we deem the law well settled. The rule forbidding passengers riding upon the front platform was a reasonable one, and it was the duty of respondent to obey the same when his attention was called to it, and if he wilfully refused to be bound by the rule and enter the body of the car, he thereby lost his rights as a passenger, and the company was not required to issue a transfer to him. Upon entering the second car he was not entitled to ride thereon without the payment of a second fare, and upon demand being made, he should have complied; or if, as there is some evidence to indicate, he desired to test the power of the company to withhold a transfer from him or to refuse him carriage without the payment of another fare upon the second car, it was his duty to withdraw when the company asserted its position, and test his rights in the courts. There was no need, and it was an imprudent act on his part, to insist upon remaining upon the car without the payment of fare, and thus invite the application of force to eject him. The proper way for him to test the question, if he desired to do so, was in the lawful and peaceable procedure of the courts, and not in opposing strength to strength, and permitting the superior force to determine the rights involved. When respondent entered the second car and thus indicated his purpose to seek carriage thereon, the conductor was justified in demanding that he pay his fare or present a transfer. The conductor was under no duty to accept his contention that he was already a passenger because of the payment of the first fare. Respondent could only lawfully continue upon the car by paying fare or producing a transfer. Failing and refusing to do that, he had no lawful right to passage, and the conductor was justified in ejecting him. In doing so, however, he would only be protected in the use of necessary force.

Going beyond that the company must answer for his act. The amount of force lawfully within the right of the conductor must be measured by the stubbornness of respondent's resistance. He had the right to use such force as was necessary to overcome respondent's resistance, and to remove him from the car, and while the amount of force lawfully to be used in the accomplishment of such removal is dependent upon the force used in resisting it, the measurement of force with force with exactness is a difficult problem for either court or jury, and hence it has become established that neither court nor jury should be required to weigh with too much nicety the amount of force necessary to an ejectment from the car in the face of the resistance offered. *Clark v. Great Northern R. Co.*, 37 Wash. 537, 79 Pac. 1108.

This, then, was the issue to be submitted to the jury; Did the employees of the company, in their endeavor to eject respondent from the car, use and employ more force than was necessary to overcome the resistance offered by respondent, accompanied by proper instructions as to the rights of the parties as herein indicated? Respondent contends that, while he did not personally offer to pay his fare, other passengers proffered a fare for him. It is immaterial to the company from whom it receives its prescribed fare. If another offered to pay respondent's fare, it was the same as if respondent himself had offered to do so, and the conductor would be bound to accept it. *Louisville & N. R. Co. v. Garrett*, 76 Tenn. 438, 41 Am. Rep. 640. But such payment on the part of others must be acquiesced in by those in the position of respondent, either by an express assent or by silence which will be construed as an acceptance. *Gates v. Quincy O. & K. C. R. Co.*, 125 Mo. App. 334, 102 S. W. 50. In the record before us, it appears that, when tenders of fare were made by outsiders, the respondent said to them: "Don't pay my fare for me. I paid my fare and I am entitled to ride home." Respondent, having thus expressly repudiated such payment, cannot thereafter claim any benefit from the

offers. This rule is likewise subject to this additional modification: Such offer on the part of others, or on the part of those whom it is sought to eject, must come before the attempted ejectment. In *Hoffbauer v. D. & N. W. R. Co.*, 52 Iowa 342, 3 N. W. 121, 35 Am. Rep. 278, it is said:

"The rule that a passenger may test the regulations of the company and the firmness of the conductor by refusing to pay full fare, and still save himself from expulsion by tendering full fare after expulsion had commenced, is not only uncalled for, for the just protection of the recusant passenger, but would tend to encourage a practice which, if indulged in, would interfere with the convenience of the company, and the dispatch and quiet to which other passengers are entitled."

A like rule is announced in *O'Brien v. New York Cent. & H. R. R. Co.*, 80 N. Y. 236, and *Pease v. Delaware L. & W. R. R. Co.*, 101 N. Y. 367, 5 N. E. 37, 54 Am. Rep. 699. Hutchinson on Carriers (3d ed.) § 1085, vol. 2, thus cites the rule and gives many authorities in support:

"The prevailing rule, and the one supported by the better reasons, is that even though he may once have refused to pay his fare or show his ticket, he may at any time before the process of ejection is begun, comply with the demand and continue his journey on that train; but that where he so refuses and persists in his refusal, after being accorded reasonable time and opportunity to comply, until the conductor has the right, and it is his duty to eject him, and the conductor has begun the process of ejection either by stopping the train or applying force to the passenger when necessary, the passenger thereupon forfeits his rights as a passenger and his ejection may be completed even though he may thereafter tender the performance demanded."

No error was committed by the court below in its instructions upon these rules of law of which we have been speaking, but inasmuch as they are involved in determining the respective rights of the parties and we have decided to grant a new trial for errors committed, we have thought it best to consider them in order to simplify and determine the rules which should govern the court in the new trial.

Respondent was permitted to interrogate witnesses as to expressions of sympathy on the part of the passengers, and that he appealed to them to determine his action, and that they insisted on his remaining. This was clearly error. Questions of this character, irrespective of the answers, should not have been allowed, as they called for expressions of opinions on the part of the passengers, which were not competent and could not be testified to by those expressing such sentiments or by those who heard them.

Respondent was also permitted to impeach the motorman of the first car in regard to his testimony as to his age. This was error. The age of the first motorman was an immaterial matter, and there was no necessity for any inquiry in regard to it. It was clearly a collateral matter and, if respondent was permitted to cross-examine the witness as to his age, he was bound by his answer and could not subsequently impeach him. It is too well established to require citation that a witness may not be impeached in a collateral matter.

Respondent was permitted to give his opinion of the monetary extent of his damages. This was also error. It was for respondent to give to the jury the character of his damage, but it was for the jury to determine its extent and fix the compensatory amount of his loss.

Respondent was also permitted to give to the jury an itemized statement of the expenses of himself and wife while traveling over the country for over a year, including railway fares, meals, sleeping car berths, and board bills, from Seattle to Los Angeles, Columbus, Ohio, and other places, amounting to the sum of $964. This was error, as the itemized bill manifestly included items that could not be properly characterized as damages naturally and proximately flowing from the injuries complained of. If, upon the advice of his physician, respondent went to Los Angeles to subject himself to conditions which were necessary and proper elements in his recovery, the necessary transportation and other expendi-

19—58 Wash.

tures of the trip, incurred for items which would not have been included in his necessary expenditure had he remained at home, would be proper elements of damage. The like expense of his wife, if respondent's condition was such that he could not make the trip alone, would also be an item of damage. Such also would be the amounts necessarily paid for medicine and medical attendance. To such extent only were the items included in the expense statement admissible.

The court charged the jury that the respondent was entitled to recover for "loss of profits, commissions, and pecuniary rewards, by reason of said injuries." This was error, as under the evidence such profits and commissions were highly speculative in their nature. There may be cases where there can be a recovery for loss of profits where, by reason of some definite contract, such profits can be definitely ascertained, but where, as in this case, they are based upon an estimate of what could have been earned had respondent been in good health and earning power, they become speculative and remote and are nonrecoverable. The proper element of damage in cases of this character is loss of earning power, if any. If, by reason of his injuries respondent's earning capacity was diminished, the extent of such diminution was a proper element of recovery, and could be arrived at by determining what he was capable of earning before and after his injury. But estimates of profits and commissions in his business, which was that of assisting in getting out special editions of newspapers in all sections of the country, respondent's commissions depending upon the financial success of the venture, were altogether too speculative and remote.

Other errors are assigned in the instructions of the court, but what has heretofore been said is determinative of them, and there is no necessity for special reference to them.

The judgment is reversed, and the cause remanded for a new trial.

RUDKIN, C. J., FULLERTON, CHADWICK, and GOSE, JJ., concur.