[No. 9172.    Department Two.    February 7, 1911.]

MATTIE LECLAIRE, *Respondent*, v. TACOMA RAILWAY & POWER COMPANY, *Appellant*.[1]

CARRIERS—PASSENGERS—WHO ARE—REFUSAL TO PAY FARE. Street car passengers who had paid fare and were entitled to ride to the end of the line are not entitled to ride in any and all cars, and upon voluntarily leaving a car before reaching their destination, they cease to be passengers and are entitled to ride in another car only by payment of another fare.

SAME—BREACH OF CONTRACT BY CARRIAGE—EXCUSE. The fact that thirty or forty persons boarded a street car and refused to pay fare, and that the employees were unable to eject them, does not excuse the company for breach of contract to carry to her destination a passenger whom the company had received on the car for such transportation, and who had paid her fare.

SAME—DELAYS—DEGREE OF CARE. A street car company must exercise only ordinary care to guard against delays by the illegal acts of third persons.

CARRIERS—BREACH OF CONTRACT—DAMAGES — EXCESSIVE VERDICT. A verdict for $1,000, reduced by the trial judge to $750, is grossly excessive and should be reduced to $100, where the plaintiff, a passenger on a street car, was delayed and refused transportation from about seven o'clock in the evening until one o'clock a. m., and reached home by team about three o'clock, only suffering inconvenience and a slight cold and loss of one day's time; and it is immaterial that the costs of appeal in the case amount to approximately $250, since the amount was exclusively in her control.

[1]Reported in 113 Pac. 268.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered March 28, 1910, upon the verdict of a jury rendered in favor of the plaintiff for $750 for breach of contract of carriage. Reversed, unless $650 is remitted.

*B. S. Grosscup* and *W. C. Morrow*, for appellant, contended, among other things, that, under the circumstances, the railway company was excused from failure to operate its through cars, and there was, therefore, no breach of duty owing to the plaintiff. *Geismer v. Lake Shore & M. S. R. Co.*, 102 N. Y. 563, 7 N. E. 828, 55 Am. Rep. 837; *Sterling v. St. Louis etc. R. Co.*, 38 Tex. Civ. App. 451, 86 S. W. 655; *Pittsburg etc. R. Co. v. Hagen*, 84 Ill. 36, 25 Am. Rep. 422; *Lake Shore & M. S. R. v. Bennett*, 89 Ind. 457, 6 Am. & Eng. R. R. Cas. 391; *Bartlett v. Pittsburgh etc. R.*, 94 Ind. 281; *Pittsburgh etc. R. v. Hallowell*, 65 Ind. 188, 32 Am. Rep. 63. The carrier was required merely to use ordinary care in the protection of its passengers. 4 Elliott, Railroads (2d ed.), § 1639; 3 Thompson, Negligence, § 34; 6 Cyc. 604; *Bosworth v. Union R. Co.*, 26 R. I. 309, 58 Atl. 982; *Tall v. Baltimore Steam Packet Co.*, 90 Md. 248, 44 Atl. 1007, 47 L. R. A. 120; *Pennsylvania R. Co. v. MacKinney*, 124 Pa. 462, 17 Atl. 14, 10 Am. St. 601, 2 L. R. A. 820; *Thomas v. Philadelphia etc. R. Co.*, 148 Pa. St. 180, 23 Atl. 989, 15 L. R. A. 416; *Chicago & A. R. Co. v. Pillsbury*, 123 Ill. 9, 14 N. E. 22, 5 Am. St. 483; *Kinney v. Louisville & N. R. Co.*, 99 Ky. 59, 34 S. W. 1066; *Pounder v. N. E. R. Co.*, (1892) 1 Q. B. 385; *Pittsburg etc. R. Co. v. Hinds*, 53 Pa. St. 512, 91 Am. Dec. 224; *Batton v. South & North Alabama R. Co.*, 77 Ala. 591, 54 Am. Rep. 80. The verdict was grossly excessive. *Cunningham v. Seattle Elec. R. Co.*, 3 Wash. 471, 28 Pac. 745; *Shannon v. Northern Pac. R. Co.*, 44 Wash. 321, 87 Pac. 351; *Davis v. Tacoma R. & Power Co.*, 35 Wash. 203, 77 Pac. 209, 66 L. R. A. 802; *Finch v. Northern Pac. R. Co.*, 47 Minn. 36, 49 N. W. 329; *Olson v.*

*Northern Pac. R. Co.,* 49 Wash. 626, 96 Pac. 150, 18 L. R.
A. (N. S.) 209.

*Govnor Teats, Hugo Metzler, Leo Teats,* and *A. A.
Howell,* for respondent.

RUDKIN, J.—The defendant railway company owns and
operates a street railway system in the city of Tacoma, and
also suburban lines running to Puyallup, Spanaway, and
other points without the city limits.    The regular fare be-
tween points within the city limits is five cents, while to points
beyond the city an additional fare is collected, depending
upon the distance traveled.    Prior to the 17th day of De-
cember, 1909, what is styled in the record the Fern Hill dis-
trict was without the corporate limits of the city of Tacoma,
and the regular fare from any point in the city to Fern
Hill was ten cents.    On that day the Fern Hill district be-
came a part of the city of Tacoma by annexation, and a
controversy arose between the street railway company and
the residents of Fern Hill as to the proper and legal rate of
fare between points within the old city limits and Fern Hill,
the former contending that it was still entitled to collect the
old fare of ten cents, while the latter contended that five
cents was the proper and legal fare between all points within
the corporate limits of the city as extended, which would in-
clude the Fern Hill district.    On the last named date the
residents of Fern Hill asserted their right to be carried from
the city of Tacoma to their homes for a five-cent fare, and
the railway company asserted its right to collect the old
fare of ten cents.    To enforce its policy and to enable it to
collect the old rate, the company collected from all passen-
gers from the city on its suburban lines a five-cent fare, for
which it carried them to a point called Midway, the old city
limits.    At this point it sought to collect from the residents
of Fern Hill, and other points without the old city limits, the
additional fare to the place of destination, and if the passen-

gers refused to pay, the company refused to transport them further.

The adoption of this policy resulted in more or less strife between the company and its patrons, and between 6 and 7 o'clock in the evening of that day a crowd, estimated at from one to two thousand people, assembled at or in the vicinity of Midway, a majority of whom had been carried there by the railway company and refused further transportation for failure to pay additional fare. The plaintiff took a car from the city at about 6:25 p. m. for the purpose of returning to her home at Spanaway. There was no controversy between the plaintiff and the railway company over the fare to that point, which had been fifteen cents, and was not affected by the change in the city limits. The company accepted her as a passenger to Spanaway, but only collected a five-cent fare, which would carry her to Midway, stating that the balance of the fare would be collected at that point. On the arrival of the car at Midway, the residents of Fern Hill aboard the car refused to pay further fare, and thirty or forty other persons who boarded the car at that point likewise refused to pay further fare. The employees of the company were unable to collect the additional fare from these Fern Hill passengers, and were also unable to eject them from the car for refusal to pay, and in consequence of such inability the car was backed onto a siding at Alki, a few blocks from Midway, where it remained until 1 o'clock the next morning, with the plaintiff still on board. At that hour she was able to obtain transportation to her home at Spanaway by means of a team and wagon, where she arrived about two hours later. This action was thereafter instituted to recover damages for breach of the contract of carriage; and from a judgment in favor of the plaintiff in the sum of $750, this appeal is prosecuted.

The three principal contentions urged in favor of a reversal of the judgment are the following: First, that the refusal of other passengers to pay their fare or leave the car,

coupled with the inability of the employees of the company to eject them for such refusal, justified the appellant in refusing to proceed further with the car, and excused its breach of contract with the respondent; second, that the appellant was prevented from carrying out its contract of carriage with the respondent by the unlawful acts and interference of the mob or assemblage at Midway; and third, that excessive damages were allowed under the influence of passion and prejudice. On the first question thus presented there is no material conflict in the testimony. The Fern Hill passengers on the car on which the respondent was a passenger refused to pay the additional fare demanded at Midway, and a large number of persons claiming the right to transportation to Fern Hill likewise boarded the car at Midway and refused to pay fare. It also clearly appears that the persons or passengers refusing to pay fare were so numerous that the employees of the company were unable to eject them from the car, and had no alternative except to carry them free of charge or refuse to proceed further.

We held in the recent case of *Peterson v. Tacoma R. & Power Co.*, 60 Wash. 406, 111 Pac. 338, that the legal rate of fare from points within the city of Tacoma to Fern Hill was five cents on that date, but that is a question of minor importance on this appeal. Those who took passage from the city of Tacoma for Fern Hill on the car on which the respondent was a passenger were entitled to be carried to their destination for five cents, and the refusal of the appellant to so carry them was wrongful and inexcusable, but those who boarded the car at Midway without the payment of fare were not passengers, and their conduct finds no warrant or authority in law. For, assuming that they had paid a five-cent fare in the city of Tacoma and thus became entitled to transportation to Fern Hill, the payment of such fare did not entitle them to transportation on any and all cars that might pass over the road. As soon as the appel-

6—62 WASH.

lant refused to transport them beyond Midway there was a breach of the contract of carriage for which the appellant became liable in damages, but when they voluntarily left the car in which they were riding, they ceased to be passengers and could only become such on another car by the payment of another fare. *Kirk v. Seattle Elec. Co.*, 58 Wash. 283, 108 Pac. 604.

As to all those who boarded the car at Midway and refused to pay fare, the refusal of the railway company to transport them was therefore rightful, but whether this alone would excuse a breach of the contract of carriage between the appellant and the respondent presents an entirely different question. In our opinion it would not. The appellant undertook to carry the respondent to Spanaway, and the mere fact that it was or might be compelled to carry thirty or forty other persons free of charge, for whose conduct the respondent was in nowise answerable, would not and should not discharge it from its obligation. We do not desire to be understood as holding that the appellant was under obligation to operate its road continually or indefinitely under such circumstances, but so long as it received passengers for transportation to a given point, it became obligated to perform its contract and public duty, unless it was prevented from so doing by something far more serious than the loss of $2 or $3 in fares from persons who wrongfully insisted on free transportation.

On the second question, it would seem clear that the appellant is not liable in damages for failure to transport the respondent to her distination if such failure was caused by the wrongful acts or interference of third persons, and we do not understand that the respondent contends for a contrary doctrine. She does contend, however, that there was no testimony to sustain this defense, or rather that the testimony offered to sustain it was incredible and false, but this was clearly a question for the jury. We are further of opinion that a carrier is only required to exercise ordinary care and

prudence to guard and protect its passengers against delays caused by the wrongful or illegal acts of third persons. *Fewings v. Mendenhall*, 88 Minn. 336, 93 N. W. 127, 97 Am. St. 519, 60 L. R. A. 601.

The foregoing discussion of the two first questions will be a sufficient guide for the court below upon a retrial of the action, which must be awarded on other grounds, and an examination or discussion of the instructions given or refused at this time would serve no useful purpose. If there was no obstacle in the way of transporting the respondent to her destination, except the refusal of certain persons or passengers to pay fare or leave the car, the appellant is liable in damages for the injury suffered and sustained through its failure in that regard. If the failure to transport her was caused by the wrongful acts or misconduct of third persons, which reasonable care and prudence on the part of the appellant would not have avoided or guarded against, the respondent must seek her remedy against the wrongdoers, whose acts were the direct and proximate cause of her injury.

It requires no argument, aside from a mere statement of the facts, to convince one that the original verdict of $1,000 in this case was grossly excessive and was founded in passion and prejudice. The respondent left the city of Tacoma at about 6:30 in the evening and should have arrived at her home at Spanaway in the neighborhood of 7 o'clock; instead of that, she was compelled to remain in the car at Alki until 1 o'clock the following morning, and did not reach her home until two hours later. She doubtless suffered some inconvenience and annoyance from the cold and from loss of sleep, but beyond this there was no actual damage. She lost one day's time and took a slight cold, which caused no considerable inconvenience so far as the record discloses. It seems to us that $100 would be a liberal award for all damages sustained, and that any sum in excess of that amount would be a wanton confiscation of the appellant's property. Should the appellant offer that sum as a premium or reward to all

who would undertake the same trip under the same circumstances with the same results, it is needless to say that its facilities would be overtaxed. Spanaway would at once become a Mecca, and Tacoma and vicinity would be well-nigh depopulated. It is said that the cost of this appeal, with its record of approximately 500 pages, will amount to or exceed the sum of $250, but with that question we have no concern. The appellant should not be penalized because the respondent demanded, and a jury and trial court awarded, far more than she was entitled to. That question was within her exclusive control. For the above error the judgment is reversed and a new trial ordered, unless the respondent remits from the judgment all·sums in excess of one hundred dollars and the costs in the court below, within thirty days after the remittitur is returned to that court.

DUNBAR, C. J., CROW, CHADWICK, and MORRIS, JJ., concur.