[No. 9965. Department One. April 1, 1912.]

MICHAEL LOY, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY et al., *Appellants*.[1]

TRIAL — SPECIAL INTERROGATORIES — CONFLICT — RESUBMISSION. Where answers to special interrogatories are conflicting and irreconcilable with the general verdict, it is the duty of the court to resubmit them to the jury.

NEW TRIAL—GROUNDS—CONFLICTING FINDINGS—ABUSE OF DISCRETION. It is an abuse of discretion to refuse to grant a new trial where the special interrogatories are conflicting and irreconcilable with the general verdict.

CARRIERS—WRONGFUL EJECTION — ACTIONS — TRIAL — CONFLICTING FINDINGS. In an action for wrongful ejection from a train, answers to special interrogatories are conflicting, where they were to the effect that plaintiff was injured in being ejected from the train, that more force was used than necessary, that the conductor struck him

[1]Reported in 122 Pac. 372.

2—68 WASH.

while he was between the car and depot, and that he was injured at the time and place he was struck to the extent of $10,000, in which amount a general verdict was returned.

SAME.  Where there was evidence that an ejected passenger, after being put off at the rear end of a smoker, followed the conductor for seventy or eighty feet to the front of the car, when he was struck and felled, an answer to an interrogatory as to where he was when struck that he was "between the car and the depot" is indefinite.

CARRIERS—WRONGFUL EJECTION—REFUSAL TO PAY FARE—RESISTANCE—REMEDIES—AGAINST CONDUCTOR.  As between the conductor of a railway train and a passenger, the latter is not justified in forcibly resisting removal from the train when, through a mistake of the ticket agent, he is unable to produce a ticket showing his right to transportation, as he must seek his remedy in the courts on the contract, or in an action of tort against the common carrier.

CARRIERS—WRONGFUL EJECTION—TENDER OF FARE.  After the commencement of the process of forcible ejection of a· passenger from a train for refusal to pay fare, a tender of the fare is too late.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered June 14, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action by a passenger for wrongful ejection.  Reversed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellants.

*Forney & Ponder,* for respondent.

GOSE, J.—This is an action in tort against the railroad company and its conductor and brakeman, for damages for the wrongful ejection of the plaintiff as a passenger from a train.  From a verdict and judgment in favor of the plaintiff, the defendant has appealed.

The complaint alleges that, while the respondent was a passenger and after he had tendered the full fare, the appellants the conductor and brakeman, the servants and agents of the railroad company, assaulted him, violently struck, beat and wounded him, and wrongfully and with force and violence ejected him from the train, and thereby inflicted

upon him bodily injuries for which he seeks redress in this action. It is further alleged that he suffered great humiliation and received indignities before many people, including his neighbors and acquaintances, by reason of his wrongful ejection. The answer denies that he was lawfully a passenger; denies that he was rightfully or with the consent of the appellant company upon the train; denies that he tendered the fare; denies that any of the appellants made an assault upon him or beat or struck him; and denies that he was wrongfully ejected from the train.

The answer affirmatively alleges that the respondent was wrongfully upon the train; that he refused to pay the necessary fare for his transportation; that he refused to leave the train when it was stopped and an opportunity given him to do so; that he forcibly resisted being ejected; and that any injury he received was caused by such resistance. The new matter in the answer was traversed by the reply. Upon the issue thus joined, and upon the evidence, the jury returned a verdict for the sum of $10,000, and a judgment was entered in accordance with the verdict.

Five special interrogatories were submitted to and answered by the jury. In answer to the first interrogatory, they found that the respondent was injured "in being ejected from the train." To the second interrogatory, they answered that the respondent was "between the car and the depot" when the conductor struck him with the lantern and knocked him down. To the third interrogatory, they answered that he resisted being ejected by "holding to the seat, door, handrails, and other parts of the car," and that it required the use of force to eject him. To the fourth interrogatory, they answered that more force was used in ejecting the respondent than was reasonably necessary. The fifth interrogatory and answer are as follows:

"Question: If you find a verdict for the plaintiff, state how much damages you allow, if any by reason of any injury

he received at the time and place he was struck by the conductor with the lantern. Answer: $10,000."

Upon the return of these interrogatories, and before the discharge of the jury, the appellant moved the court to require the jury to make their answer to interrogatory two more definite, by stating where the respondent was when the conductor struck and felled him with the lantern. The motion was denied.

The special findings cannot be harmonized with each other, or with the general verdict, or with the evidence. In passing upon the motion for a new trial, the court said:

"But the question raised as to the special findings of the jury being in conflict with their general verdict, is more serious. I am unable to harmonize the special findings with the general verdict, but possibly the supreme court can do so and I think I will just let the supreme court wrestle with it."

It seems almost needless to say that, with the view the trial court entertained of the relations of the special findings to the general verdict, it should have granted the appellants' motion to re-submit the interrogatory to the jury for a more definite answer; and failing in this, should have granted a new trial. While we have repeatedly held that it is within the sound discretion of the trial court to refuse to submit special interrogatories to a jury (*Sudden & Christenson v. Morse*, 55 Wash. 372, 104 Pac. 645; *Morrison v. Northern Pac. R. Co.*, 34 Wash. 70, 74 Pac. 1064; *Pencil v. Home Ins. Co.*, 3 Wash. 485, 28 Pac. 1031; *Bailey v. Tacoma Traction Co.*, 16 Wash. 48, 47 Pac. 241; *Walker v. McNeill*, 17 Wash. 582, 50 Pac. 518, and *Hart Lumber Co. v. Rucker*, 20 Wash. 383, 55 Pac. 320), it is the plain duty of the court, when it has submitted them and the answers are conflicting or not reconcilable with the general verdict, to resubmit them for a fuller consideration by the jury.

Upon the second proposition, where the trial judge admits his inability to reconcile the special findings with the

general verdict, it becomes his imperative duty to grant a new trial, and a failure to do so is an abuse of that sound discretion which the law has wisely lodged in every trial judge. The trial judge should "wrestle" with and solve such questions himself, in aid of orderly procedure and to the end that the parties litigant should have a speedy determination of their differences. The jury is but an arm of the trial court, and the law puts a duty upon the judge as well as upon the jury, and when for any cause the trial judge cannot say that a fair trial has been had or that the issues have been fully and fairly determined by the verdict of the jury, it is his duty to grant a new trial. This view is well stated by Judge Ellis, in *Snider v. Washington Water Power Co.*, 66 Wash. 598, 120 Pac. 88, where he said:

"The very purpose of the law in requiring the trial judge to preside at jury trials is to insure, as far as may be, that spirit of fairness, orderly conduct, and observance of law without which the administration of justice would be a farce, to the end that a fair trial may be had. When he cannot say with any degree of certainty in his own mind, whether, on account of the conduct of counsel or for any other reason, that this has not been attained, it becomes his duty to grant a new trial. Such a situation is sufficient to invoke that discretion which the law has wisely reposed in the trial judge. Being himself a factor in the trial, he is better able to observe, and in a measure to feel, the effect of these things upon the minds of the jury than an appellate court can be. It is upon this wholesome principle that this court has said that the trial court has an inherent power to grant a new trial to the end that justice may be attained."

The jury have found, that the plaintiff was injured "in being ejected from the train;" that more force was used than was reasonably necessary, and that the respondent was "between the car and the depot" when the conductor struck him with the lantern and knocked him down. A reference to interrogatory five and the answer to it discloses that it conflicts with the other findings.

The conflict between the answer to interrogatory five and

the evidence, however, is more marked. A fair reading of the respondent's evidence is to the effect that he was struck, beaten, and kicked by the conductor and brakeman, from the time he was taken from his seat in the car until he was put upon the ground at the rear platform of the smoking car and, as he and his witness said, knocked down with the lantern. On the other hand, the evidence of the appellants is that he was neither struck, beaten, kicked, nor struck with the lantern in the process of ejection or after he was put upon the ground at the rear end of the smoker, but that he followed the conductor (who was going to the depot for his orders) from the rear of the smoking car to the front of the car, a distance of seventy or eighty feet, and that he then approached the conductor in a threatening manner, and said to him "I will fix you," or, as some of the witnesses put it, "I will fixie you," and that the conductor then struck and felled him with the lantern. It is obvious, therefore, that the answer to the second interrogatory, that the respondent was "between the car and the depot" when struck and knocked down with the lantern, is indefinite; and it is equally plain that, if the jury intended to say that the respondent was then at the front end of the smoking car, he had ceased to be a passenger, and there would be no liability upon either the railroad company or the brakeman.

Respondent's testimony is that he purchased a ticket at Winlock, a station on the line of the road of the appellant company, for carriage to Chehalis; that he told the ticket agent that he wanted a Northern Pacific ticket; that the agent gave him a Great Northern ticket; and that, when he presented it to the conductor, it was refused and a fare demanded, and that he explained to the conductor the mistake of the ticket agent. The court instructed the jury, touching this state of facts, as follows:

"I instruct you further, that if the plaintiff presented to the conductor a ticket issued by mistake of the defendant company's agent and notified the conductor of such mistake

of the company's agent, then, in such case, the Northern Pacific Railway Co. would have no right to remove the plaintiff forcibly from its train, and if it did so by and through its conductor, both the defendant company and the defendant conductor did so at their peril and are liable for all the results for the force so used in ejecting plaintiff."

A later instruction put a like liability upon the brakeman. The instruction is erroneous as to both the conductor and the brakeman. The better rule is that, as between the conductor of a railway train and a passenger, it is incumbent upon the latter to produce a ticket showing his right to transportation, when called upon by the former, or pay the fare in money, or peaceably leave the train; and upon his failure to do one of these things after being accorded a reasonable time and opportunity, he may be ejected by the conductor. *Kirk v. Seattle Elec. Co.*, 58 Wash. 283, 108 Pac. 604, 31 L. R. A. (N. S.) 991; 6 Cyc. 558b; White's Supplement to Thompson on Negligence, § 3225; *Brown v. Rapid R. Co.*, 134 Mich. 591, 96 N. W. 925; *Norton v. Consolidated R. Co.*, 79 Conn. 109, 63 Atl. 1087, 118 Am. St. 132; *Mosher v. St. Louis etc. R. Co.*, 127 U. S. 390; *Arnold v. Atchison etc. R. Co.*, 81 Kan. 400, 105 Pac. 541.

"The proper basis of the right of the passenger to recover for the act of the conductor in expelling him when he has secured from the proper agent the right to be transported is not, as suggested in some cases, that such expulsion is a breach of contract, nor, as suggested in other cases, that the conductor is in the wrong in not accepting the passenger's explanation, but that, although the conductor has acted properly under reasonable regulations in expelling the passenger for not having proper evidence of right to transportation, this expulsion is such as naturally results from the wrongful act of the agent which constitutes therefore the occasion for the expulsion and renders the carrier liable therefor." 6 Cyc. (B) p. 558.

In the *Kirk* case, it is said, when the passenger has no ticket and refuses to pay his fare but desires to stand upon his contract right with the carrier for the transportation

that is denied him, it is his duty to retire from the car upon the request of the conductor. It is further said that the place to test his rights is in the lawful procedure of the courts, "and not in opposing strength to strength." The passenger cannot enhance his damages by resisting ejection. Any other rule would not only lead to inextricable confusion, but would imperil the peace of mind and the personal security of the other passengers. A proper regard for their welfare forbids the turning of a passenger coach into either a debating hall or a boxing arena. This rule is supported in principle in *Mills v. Seattle, Renton & Southern R. Co.*, 50 Wash. 20, 96 Pac. 520, 19 L. R. A. (N. S.) 704. In announcing this view, we do not intend to modify the rule announced in *Lawshe v. Tacoma R. & Power Co.*, 29 Wash. 681, 70 Pac. 118, 59 L. R. A. 350; and *Northern Pac. R. Co. v. Pauson*, 70 Fed. 585, 17 C. C. A. 287, decided by the circuit court of appeals of the ninth circuit, which hold that in such cases the passenger can recover in an action of tort against a common carrier.

The court also instructed the jury that, if the respondent failed to produce a proper ticket when called for by the conductor, but insisted upon riding upon the ticket which he had and refused to pay a fare when the conductor demanded it, and the conductor and brakeman, or either of them, thereupon commenced to forcibly eject him from the car, and "while so engaged in such ejection" the respondent or some one in his behalf in good faith offered to pay the necessary fare from Winlock to Chehalis, it then became the legal duty of the conductor and brakeman to at once desist from further efforts to eject the respondent and to accept the fare and allow him to ride to his destination, and that if they refused such cash fare and forcibly ejected him and in so doing injured him, the company, the conductor, and the brakeman "would be liable for all injuries so received" by the respondent "which were inflicted upon him after the fare was tendered to the conductor." This was error. *Kirk v.*

.*Seattle Elec. Co.*, supra; 6 Cyc. 554; *Missouri, K. & T. R. Co. v. Smith*, 152 Fed. 608.

In the *Kirk* case we said:

"Such offer on the part of others, or on the part of those whom it is sought to eject, must come before the attempted ejectment."

For the reasons stated, the judgment is reversed.

DUNBAR, C. J., CROW, PARKER, and CHADWICK, JJ., concur.