[No. 11995. Department One. November 16, 1914.]

BROWN BROTHERS, *Respondent*, v. COLUMBIA IRRIGATION DISTRICT, *Appellant*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—CONTRACTOR'S BONDS — CONDITIONS—LIABILITY TO MATERIALMEN. A materialman, furnishing supplies to a contractor on municipal work (an irrigation district) cannot maintain an action against the district on the contractor's bond given to the district to secure the performance of the contract, where the bond was not conditioned for the payment of all claims for labor, material, and supplies furnished and used in the work, as required by Rem. & Bal. Code, §§ 1159-1161; but ran to the irrigation district only, and provided that no right of action should accrue thereon to the use of any person other than the district.

SAME — CONTRACTOR'S BOND—CONSTRUCTION—TERMS OF CONTRACT. In such a case, the contractor's bond is not to be read and construed in connection with the contract which it was given to secure, where the action was not prosecuted between the parties to the bond, but by third parties, who were excluded by the terms of the bond, which provided that no action could be maintained thereon except by the obligee.

SAME—FAILURE TO TAKE BOND—LIABILITY OF MUNICIPALITY. A materialman furnishing supplies to a contractor on public work for

[1]Reported in 144 Pac. 74.

an irrigation district, which took a bond that was not conditioned as required by Rem. & Bal. Code, §§ 1159-1161, to secure payment of all claims for labor and material and supplies used on the work, has a cause of action against the district for failing to take the statutory bond, although he may not have any right of action on the contractor's bond taken.

MUNICIPAL CORPORATIONS — IRRIGATION DISTRICTS — CONTRACTOR'S BONDS—LIABILITY—STATUTES—CONSTRUCTION. An irrigation district is a municipal corporation, within the meaning of Rem. & Bal. Code, § 1160, providing that "if any board of county commissioners of any county, mayor, and common council of any incorporated city or town, or tribunal transacting the business of any municipal corporation," shall fail to take a bond, such county, city, or town, or other municipal corporation shall be liable to the person furnishing labor, supplies, or material; since the words "other municipal corporation" was not used in any restricted sense, as defined by hard and fast rules, but to all public corporations created by general law and exercising governmental functions, and having a meaning as broad as the power of the legislature to create public corporations and clothe them with power to discharge a municipal function for the convenience of any particular locality.

SAME. The fact that the first section of the act relating to taking bonds from contractors on public work for the protection of persons furnishing labor, material, or supplies, refers, as amended, to municipal corporations, or "other public bodies," while the second section (Rem. & Bal. Code, § 1160), fixing liability for failure to take the bond omits "other public bodies," does not show that an irrigation district, being a public body, is not a municipal corporation, and so not amenable to the second section, under the rule of *expressio unius est exclusio alterius;* since remedial statutes are to be so interpreted as to find the object of the legislature and to enforce it, if possible, without violence to any mandate of the constitution.

Appeal from a judgment of the superior court for Stevens county, Blake, J., entered January 30, 1914, in favor of the plaintiff, in an action on contract, after overruling a demurrer to the complaint. Affirmed.

*Jesseph & Bourland* and *Osee W. Noble,* for appellant.

*Danson, Williams & Danson* (*George D. Lantz,* of counsel), for respondent.

CHADWICK, J.—Defendant is organized under the irrigation district law of the state of Washington, and as such let

a contract to the Spokane Concrete Company for the construction of an irrigation system for the district. The Spokane Concrete Company purchased supplies and materials from plaintiff. Its account not having been paid, it began an action against the defendant, which appeared and demurred to the complaint. The demurrer was overruled, and defendant, standing upon its demurrer, has appealed to this court from a judgment as prayed for.

It is the contention of the defendant that it cannot be held to answer to the suit of plaintiff for two reasons; first, because it took a bond from the Spokane Concrete Company conditioned for the payment of all claims for labor, material and supplies, as provided in Rem. & Bal. Code, §§ 1159-1161 (P. C. 309 §§ 93, 95, 97); or second, if it be held that the bond taken did not comply with the statute, the defendant corporation is not one of those specified within Rem. & Bal. Code, § 1160 (P. C. 309 § 95), and there being no common law liability, the complaint does not state a cause of action.

The bond runs to the defendant and is not conditioned as the statute requires. It is admitted that the bond is insufficient for want of condition unless the contract is read into and made a part of the bond. The obligation of the bond is,

"Now, therefore, the condition of this obligation is such, that if the principal shall faithfully perform all the terms and conditions of said contract and indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract, then this obligation shall be void; otherwise to remain in full force and effect; Fifth: That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee herein named; and that the obligation of the surety is, and shall be construed strictly as, one of the suretyship only, shall be executed by the principal before delivery, and shall not, nor shall any interest therein or right of action thereon, be assigned without the prior consent, in writing, of the surety."

The terms of the contract relied upon by defendant to sustain its theory are:

"and that all excavations shall be made and back-filled, and all work done and materials furnished hereunder by the first party hereto at its own cost and expense and without cost or charge to the second party, and that no person or persons performing work or labor hereunder or furnishing material hereunder shall have any lien against the second party therefor, but that all work done and materials furnished in the carrying out and completion of this contract shall be done exclusively on the credit of the first party hereto."

Counsel cite many cases holding that a bond given to insure the faithful performance of a contract is to be read in connection with and as a part of the contract, when an action is brought to recover thereon. We have no doubt of the rule. It has been held by this court in a number of cases. *Friend v. Ralston*, 35 Wash. 422, 77 Pac. 794; *McDonald v. Davey*, 22 Wash. 366, 60 Pac. 1116; *Trinity Parish v. Aetna Indemnity Co.*, 37 Wash. 515, 79 Pac. 1097; *Martin v. Empire State Surety Co.*, 53 Wash. 290, 101 Pac. 876.

But in all of those cases—and the rule is universal—the action was waged between the parties to the contract. The bond the statute requires is in aid of the laborer, materialman, and those who furnish supplies to be used upon public works, and is designed to give a remedy that was not known or encouraged at common law. In so far as the claimant is concerned, the contract between the public or municipal corporation and the contracting party is wholly immaterial. If it were not so, a contract and bond might be so drawn as to work an exemption under the statute by providing that a settlement or payment by the municipal corporation to the contracting party would exonerate the bond, or, as in this case, by providing that no action could be maintained on the bond by any one other than the obligee.

Although assailed by counsel we think, nevertheless, that the case of *Puget Sound Brick, Tile etc. Co. v. School District No. 73*, 12 Wash. 118, 40 Pac. 608, is controlling. It was there conceded, and we think it is so here, that the bond was not one upon which an action could have been maintained

by the one who had furnished material to the contractor, and it was also admitted, as it is here, that the bond was insufficient if construed independently of the contract. It was held that the school district had not protected itself as required by statute, and was liable to one who had furnished supplies to the contractor for the erection of the building. *Greenfield Lumber & Ice Co. v. Parker*, 159 Ind. 571, 65 N. E. 747.

It is contended that the *Puget Sound Brick Company* case is in conflict with the later cases of *Wheeler, Osgood & Co. v. Everett Land Co.*, 14 Wash. 630, 45 Pac. 316, and *Crowley v. United States Fidelity & Guaranty Co.*, 29 Wash. 268, 69 Pac. 784. But these cases, like others cited, were waged between the contracting parties. The statute controlling this case was in no way invoked. Moreover, the defendant has itself construed the bond as personal to itself. It is alleged in the complaint, and is admitted as a fact, that, after the sale and delivery of the material furnished by plaintiff, the defendant entered into an agreement to settle with its surety and agreed that the bond should be surrendered, and that it was then and there cancelled and surrendered to the surety company.

We think it is clear that plaintiff has a right of action against the defendant for its failure to take a statutory bond. Whether the defendant has a right of action against its surety is a question we do not express any opinion upon.

Coming to the second proposition: Laws of 1888, ch. 12, § 1, page 15, reads as follows: .

"Whenever the board of county commissioners of any county of this territory or the mayor and common council of any incorporated city or town or the tribunal transacting the business of any municipal corporation, . . ."

Section 2 of the act as originally drawn, provided that,

"If any board of county commissioners of any county, or mayor and common council of any incorporated city or

town, or tribunal transacting the business of any municipal corporation,"

shall fail to take a bond, such county, city or town, or other municipal corporation, shall be liable to the persons furnishing labor, supplies or material. The legislature of 1897, Laws of 1897, page 57, amended section 1 of the original act as follows:

"Whenever any board, council, commission, trustees or body acting for the state or any county *or municipality or other public body* shall contract with any person or corporation . . ." (Italics are ours.)

By this amendment, public bodies other than those mentioned in the original act were made amenable to the statute. The legislature of 1909, Laws of 1909, page 716 (Rem. & Bal. Code, §§ 1159-1161), reenacted the law, clarifying in some degree the first section of the act. No change of any kind was made in section 2; and it is contended that, inasmuch as an irrigation district is a public body within the meaning of the first section of the act as it now stands, and such descriptive words are not included in the first section of the act, the irrigation district does not come within the penal clauses of the statute, and it is therefore not liable.

We may grant that this is true unless the legislature, when passing the act, adopted and reenacted the words "or other municipal corporations (Sec. 2), as sufficient to include any or all of the bodies designated in the first section of the act as "board," "trustees" or "municipality or other public body." To meet this suggestion, it is contended that this act was passed at a time when this court had declared, in *Board of Directors Middle Kittitas Irr. Dist. v. Peterson*, 4 Wash. 147, 29 Pac. 995, that an irrigation district formed under the statute providing for the organization of irrigation districts was not a municipal corporation. The question there considered was whether an irrigation district was a municipal corporation within the meaning of art. 8, § 6, of the constitution, which puts a limit upon the indebtedness that can be

incurred by "county, city, town, school district, or other municipal corporation." In discussing the case, the broad ancient definition of a municipal corporation was adopted; that is, "for the purposes for which it is organized it must affect all within its boundaries alike." There is much that is said in that opinion that gives color to the contention of the defendant, but when taken in its entirety, and coupled with the holding that "it may be conceded that the effect thereof (constitutional classification) has been to enlarge the definition of 'municipal' so that corporations will fall within that class which would not otherwise have done so," and "we are, however, better satisfied to hold that these districts, although undoubtedly corporations, are not municipal corporations within the meaning of said section of the constitution;" we think the doctrine of the *Peterson* case should not be extended beyond its terms.

Originally, municipal corporations were counties, cities, towns and (latterly) school districts, and although it may be held that corporations other than those mentioned, and those falling within the technical definition of the word "municipal" are not within the provisions of the constitution which fix debt limits, it seems certain that the makers of the constitution did not intend to use the words "other municipal corporations" in any restricted sense, or as defined or tested by any hard and fast rule. Naming the usual municipal corporations, and following with the words "other municipal corporations," as occurs wherever the subject is treated in the constitution, would indicate that the people had in mind the fact that the legislature might, from time to time, create public corporations and clothe them with a limited share of the functions that it might have delegated to counties, cities and towns.

The power to drain, irrigate or dyke land might have been given to the counties. If it had been, they would have been exercising a municipal function just as a city does when it paves a limited area or district by special assessments against

the property benefited. Can it then be held that an irrigation district exercising a municipal function is not a municipal corporation, within the meaning of the phrase "other municipal corporations," as it is employed in the constitution? If it were not so contemplated, then no reason can be assigned for using the words "other municipal corporations" at all, for all the powers given to an irrigation district might have been put upon the counties, cities or towns of the state.

It seems to the writer that this is the logic of *Hanson v. Hammer*, 15 Wash. 315, 46 Pac. 332, where an act providing for the establishment of diking districts was sustained over the contention that special assessments could be made by cities, towns and villages, and that a diking district was not one of "all municipal corporations" within the meaning of art. 7, § 9, of the constitution, of which the court said:

"The second clause in the provision which provides that 'for all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes,' etc., must mean general corporate purposes affecting all the people in the county, and for that reason such taxes should be uniform, but would not prohibit the levying of an assessment upon property benefited for the purpose of constructing an improvement which might benefit a portion of the county only."

Undoubtedly the legislature meant to include in the terms "other municipal corporations" all public corporations created by general law and exercising governmental functions within a district. If it were not so, the status of municipal as well as public corporations would be determined by reference to the name employed rather than by the functions exercised. If a city were given power to do all that may be done by an irrigation district, it would be none the less a municipal corporation. If that power is given to another public corporation, it is to that extent a municipal corporation; irrigation districts and reclamation districts have been held to be public corporations for municipal purposes. *Dean v. Davis*, 51 Cal. 406; *People v. La Rue*, 67 Cal. 526, 8 Pac

84; *Central Irr. Dist. v. De Lappe*, 79 Cal. 351, 21 Pac. 825. In the latter case, the district was found to be a municipal corporation within the meaning of a constitutional provision that corporations for municipal purposes shall not be created by special laws. In the case of *In re Madera Irr. Dist.*, 92 Cal. 296, 28 Pac. 272, 675, 27 Am. St. 106, 14 L. R. A. 755, the court, having under consideration the power of the legislature to create such corporations, said:

"It [the legislature] may, too, by general laws, authorize the inhabitants of any district, under such restrictions, and with such preliminary steps as it may deem proper, to organize themselves into a public corporation, for the purpose of exercising those governmental duties upon the same principle as it authorizes the incorporation of any municipal corporation under general laws. The constitution of California has been framed with the principle of investing separate subdivisions of the state with local government, and especially authorizes the legislature to confer the power of local legislation upon such subdivisions within the state as may be organized under its authority. The legislature is itself forbidden to interfere in any manner, except by general laws, with the power of local legislation intrusted to such organizations, nor can it delegate to any but public corporations the power to perform any municipal functions whatever, or vest in any but the corporate authority of a municipal corporation the power to assess and collect taxes for any municipal purpose. But although the legislature is prevented from passing any special or local law which shall be applicable to only a particular portion or district of the state, its power of legislation for the public good in that portion of the state has not been destroyed. It still retains the full power of legislation conferred upon it in the constitution, but is required to exercise such power in the mode prescribed in that instrument. It may pass general laws which from their nature will be capable of enforcement in only particular portions of the state; or it may by other general laws authorize the organization of municipal corporations which, from the nature of the functions intrusted to them, can find occasion for organization only in certain portions of the state, and it may by such general laws provide for the organization of such and as many species of municipal corporations as, in

its judgment, are demanded by the welfare of the state, and the 'protection, security, and benefit of the people,' for which government is instituted, and which has been by the people confided to it."

To hold that the defendant is not a municipal corporation in a general sense would upset many of the settled plans provided by the legislature for local self-government. The legislature, either by apt designation or by a definition of power, has provided for the creation of many public corporations other than those expressly named in art. 8, § 6, of the constitution; as for instance, commissions for the government of cities, irrigation districts, agricultural development districts, drainage districts, commercial waterway districts, port commission districts, etc., etc. The power to create municipal corporations has been uniformly upheld by this and other courts. It was held in *Paine v. Port of Seattle,* 70 Wash. 294, 126 Pac. 628, 127 Pac. 580, that the power is elementary and to be exercised freely unless prohibited by the constitution itself, the court saying:

"We are of the opinion that the legislature has ample power under our constitution to enact laws providing for the creation of municipal corporations other than counties, cities and towns and school districts . . ."

The words "municipal corporation" as used in Rem. & Bal. Code, § 1160 (P. C. 309 § 95) have a meaning therefore as broad as is the power of the legislature to create public corporations and clothe them with the duty of discharging a municipal function.

No violence is done to the law or to any rule of statutory construction when we hold that the legislature must have believed, in reenacting the law, that the words "or tribunal transacting the business of any municipal corporation" (§ 1160) were sufficient to include the words added to the statute (§ 1159) when reenacted in 1909, that is, "or any other public body."

The words "municipal corporation" being comprehensive

of every public body exercising legislative authority for the interest, advantage, and convenience of any particular locality and its inhabitants, although in limited degree, it follows that defendant is bound by the penal clause of the statute.

We do not understand that it is contended that the legislature did not intend to cover public bodies, such as irrigation districts, by the several acts and amendments. The sole contention is that § 1160 of the code will not bear that construction under the rule of *expressio unius est exclusio alterius;* whereas, the rule governing the interpretation of remedial statutes is to find the object of the legislature and to enforce it if it can be done without violence to any mandate of the constitution.

We find no error in the judgment of the court. Affirmed.

CROW, C. J., ELLIS, MAIN, and GOSE, JJ., concur.