MICHAEL T. CURRAN, Appellant, v. UNITED RAIL-
WAYS COMPANY OF ST. LOUIS, Respondent.

**St. Louis Court of Appeals, June 6, 1917.**

1. **CARRIERS OF PASSENGERS: Rules Regulating Issuance of Trans-
fers: Validity.** Under an ordinance requiring a street railway
company to transport passengers in the city from any one point
on its system to any other point thereon, for one fare, a rule of
the company, providing that, where a passenger takes passage at
a point of intersection of two lines, a transfer entitling him to
be carried on the other line, from a point of subsequent intersec-
tion to his destination, will not be issued, if such other line will
take him from the point of first intersection to his destination
without transferring and over a route substantially as short, is
a reasonable and enforceable regulation.

2. ———: **Right to Eject Passenger Refusing to Pay Fare.** A street
railroad company is not liable for ejecting a passenger who re-
fuses to pay his fare unless a transfer, to which he is not en-
titled under the reasonable rules of the company, is issued to him,
if its servants, in ejecting him, use no more force than is necessary.

Appeal from St. Louis City Circuit Court.—*Hon. J.
Hugo Grimm,* Judge.

AFFIRMED.

*Russell I. Tolson* and *Wagner & Miller* for appel-
lant.

(1) Appellant was entitled to the issuance of the
transfer requested by him.   (a) The ordinance grant-
ing the franchise under which respondent operated its
lines is broad enough to secure to passengers the right
to such transfers.   (b) Respondent never made or pre-
scribed, or attempted to make or prescribe, any rule or
regulation denying the issuance of such transfers.   (c)
If respondent ever made or prescribed any such rule or
regulation, it had been completely waived and annulled
by respondent's long established custom and usage of is-
suing such transfers.   (d) If respondent ever made or
prescribed any such rule or regulation it was an unjust
and unreasonable one and not binding upon appellant

and other passengers in like situation. 36 Cyc, "Street Railroads," pp. 1453-1456, and cases cited; Charbonneau v. Nassau Electric R. Co., 123 N. Y. App. Div. 531, 108 N. Y. Supp. 105; Kelly v. New York City R. Co., 119 N. Y. App. Div. 223, 104 N. Y. Supp. 561; Freeman v. New York City R. Co., 92 N. Y. Supp. 47. (2) The unlawful assault upon and ejection of appellant was actionable. He was a passenger and presented himself as such in a proper condition, ready, able and willing to pay his fare, which he tendered, asking for only that to which he was lawfully entitled, and he was not obliged to pay a second fare under protest and then sue for his damages on the basis of such payment. Graham v. Pacific R. Co., 66 Mo. 536.

*G. I. Priest* and *T. E. Francis* for respondent.

(1) Defendant has the right to make reasonable rules and regulations for the issuance of transfers, in the operation of its street railway system. It is obligated to issue transfers to passengers from one line to another by the shortest and most direct route only, and when it does that, its obligation is discharged. A passenger does not have the option of selecting the route by which he will travel from the point of embarkation to the point of his destination, if the company offers him another route which is shorter and will carry him to his destination without changing cars. Miles v. Railroad, 96 Pac. 520; 19 L. R. A. (N. S.) 704.

BECKER, J.—This is an action by plaintiff against the defendant company for assault and battery, the plaintiff having been ejected from one of the defendant's street cars by the conductor in charge thereof, on account of his refusal to pay his fare. The case was tried before a judge and a jury, a verdict resulting for plaintiff for $50 actual and $2000 punitive damages. Defendant was granted a new trial, "Because the court erred in overruling defendant's demurrer offered at the close of plaintiff's evidence, and again at the close of all the evidence." Plaintiff appeals.

Plaintiffs, at the time of the trial, was forty-nine years old and was employed in the capacity of traffic manager for a stove company located in Eighth street and Chouteau avenue in the city of St. Louis, Missouri, and resided in the southwestern part of the city, at 4138 Juniata street.

The defendant, United Railways Company owns and operates the street railways in the city of St. Louis, including the lines known as the Fourth street line as well as the Tower Grove line. These two lines of cars intersect at Twelfth street and Chouteau avenue and also at Grand avenue and Arsenal street, each of which intersections is a point of transfer from one line to the other. The record shows appellant could have boarded a car on Chouteau avenue at Eighth or Ninth streets, which are the corners nearest his place of business, in which case a transfer would have been issued to him for the Tower Grove line west, but the appellant, instead of boarding the car at either of these corners, preferred to walk to Twelfth street and Chouteau avenue, a distance of two and one-half short blocks, and gave as his reason for doing so that the Fourth street cars were always crowded when he started home at the close of his day's work, but that usually quite a number of passengers got off the Fourth street car at Twelfth street, where they transferred to the Tower Grove car, which gave him a better opportunity to get into the car at that point. It was his custom to board the Fourth street car at Twelfth street and ask for a transfer to the Tower Grove line west, making the transfer at Grand avenue and Arsenal street.

At Twelfth street and Chouteau avenue, at the point at which appellant customarily boarded a Fourth street car, he could have boarded a Tower Grove car, which would take him to his destination by a direct route, without the necessity of transferring. The Tower Grove line is approximately three hundred and sixty feet longer from the Twelfth street and Chouteau avenue intersection of that line with the Fourth street line, to the intersection of these two lines at Grand avenue and Arsenal street.

However, the running time on these lines is the same between these points. There was testimony on behalf of the defendant company that more passengers per car mile were hauled on the Fourth street line than on the Tower Grove line.

Appellant, instead of taking the direct line in the first instance, for a long time had customarily taken the Fourth street car at Twelfth street and Chouteau avenue and obtained a transfer to the Tower Grove line, marked "Tower Grove west," and made his transfer at Grand avenue and Arsenal street. Transfers of this kind had been issued to him by the Fourth street car conductors with but few exceptions. One of these occasions, on November 10, 1913, appellant had been refused a transfer by one of the conductors on the Fourth street line, and was given as the reason for this refusal that the appellant might want to use the transfer to return downtown. Appellant explained to the conductor that there was a place provided on the transfer where it could be punched, "Tower Grove west," so that it would be impossible to use the transfer for a return trip east. The conductor still refused to issue the transfer and appellant was obliged to pay an additional fare at Grand avenue and Arsenal street when he boarded the Tower Grove line at that point. After that day appellant had no further trouble about getting a transfer in this manner until November 24, 1913, when he happened to get on a Fourth street car on which the same conductor was in charge who had previously refused to issue him a transfer. The conductor again refused him a transfer. This time the conductor stated as his reason for the refusal that appellant should get on a Tower Grove car at Twelfth street and Chouteau avenue, where appellant had boarded the Fourth street car.

The following day the appellant sent a letter to the superintendent of transportation of the defendant company, outlining what had occurred the night before and asking whether or not he was entitled to a transfer from this conductor. To this letter appellant received no reply.

On December 17, 1913, appellant boarded one of the cars of the defendant company's Fourth street line at the said intersection of Twelfth street and Chouteau avenue, in company with a Mr. Schieck. Mr. Schieck tendered the fare for himself and appellant asked for one Bellefontaine transfer and one Tower Grove transfer; the conductor offered to issue the Bellefontaine transfer, but refused to issue a Tower Grove West transfer, whereupon appellant said: "Then we don't pay no fare until we get a transfer." Mr. Schieck, however, dropped one fare in the box, and the conductor issued him a Bellefontaine transfer; but the appellant continued to refuse to pay his fare. After the car had gone some six or seven blocks the conductor came into the car where the appellant stood and asked him if he intended to pay his fare, and upon appellant replying: "Yes, whenever you give me a transfer," the conductor stopped the car and undertook to put the appellant off. The appellant did not fight with the conductor, merely holding on to the bars which were back of the conductor's booth or stand, and when the conductor finally got him as far as the door of the car, the appellant grabbed hold of the outside hand-grip and held fast thereto, whereupon the motorman, who was standing by at the request of the conductor, upon the conductor telling him: "Get busy, I have orders on this," aided in breaking the appellant's hold on the grip-handle and got appellant away from the car. Appellant then got back upon the car, tendered his fare, and made his trip homeward.

The defendant company introduced evidence tending to show that the conductors on the Fourth street line were instructed not to issue transfers for Tower Grove line west to any passengers boarding the Fourth street line at Twelfth street, and that no conductor had authority to do otherwise.

An ordinance (No. 19352) of the city of St. Louis, governing the operation of the defendant's street railway system, including the two car lines in question, was introduced in evidence and by section 5 thereof it is provided:

197 M. A.—26

"Transfers shall be given so as to transport passengers by a continuous trip from any point on the system to any other point on the system."

In the written memoranda filed by the learned trial judge in sustaining defendant's motion for a new trial, it is said:

"The case turns entirely upon the question whether the plaintiff was entitled to a transfer under the circumstances stated or not. This question has received considerable thought on the part of the court since the case was tried. The plaintiff had the right and it was the duty of the defendant to carry him from the point where he boarded its lines to any other point on its system for one fare, and as has been heretofore held, by the most direct route. If the passenger can, at the point at which he wishes to board a car, take the identical car which will leave him at his destination he has not, in my opinion, the right to take a car on a different line, which crosses at the same point, and insist upon being transferred from that line to the first named line at another point where they cross each other; especially is this true in a case such as this where the passenger by so doing is not taking a substantially shorter route to his destination. The evidence in this case showed that by taking the Fourth street car, to Grand avenue and Arsenal street and then transfering to the Tower Grove Car, plaintiff saved in distance a matter of something like a block; in other words, that the route over the Tower Grove line from Twelfth and Chouteau to Grand and Arsenal is about one block longer than the route, between the same two points, of the Fourth street line. Under such circumstances, I do not think that a passenger has a right to insist on traveling on two lines, which would mean letting him on and off the cars twice instead of once, with the resultant loss of time to the defendant and the increased risk of injury to him and consequent liability to the company.

"It is a fact of which the court will take judicial notice that many of the lines of defendant's street railway cross each other at different points in the city, us-

ually at one point downtown and again at some point in the more outlying district. In as complex a system as that of the defendant it is necessary for it to adopt rules with relation to the operation of its cars and also the issuance of transfers to protect it from imposition and unnecessary delay and hazard, and it may do this so long as it complies with its contract obligations with the city, to carry passengers from one point on its system to any other point for one fare, and by the most direct route practicable. I believe the rule of refusing to issue a transfer, at a point where two lines cross each other, so as to entitle the passenger to transfer to the crossing line at another point where they cross, is a reasonable rule; certainly in all cases where the length of the two routes between the two crossing points are about the same, which is all I have to decide in the present case.

"If this view is correct, then it follows that the conductor was right in refusing a transfer; that plaintiff was not justified in refusing to pay his carfare, and that his removal from the car, accomplished, as already stated, without unnecessary force and without any circumstances indicative of a desire to injure or humiliate him, was not wrongful. This being true, plaintif has no cause of action."

What we have quoted above from the memoranda of the learned trial judge is a correct statement of the law applicable to the facts in this case and we adopt the same as part of our opinion herein.

The public convenience, and not the indulgence of individual caprice, is to be served, and this is to be accomplished by reasonable rules and regulations of the company in conformity with such ordinances as may be pertinent thereto. A passenger has not the option of selecting the route by which he will travel from one point where he boards the car to the point of his destination, if the route selected requires a transfer, where the company offers the passenger a direct route between the said points, which will take him to his destination in the same time and by practically as short a route, and without transferring, as in the instant case. [Mills v.

Seattle R. & S. Ry. Co., 96 Pac. Rep. 520; Kelly v. N. Y. City Ry. Co., 119 N. Y. App. Div. 223; Freeman v. N. Y. City Ry. Co., 92 N. Y. Supp. 47.] The rule or regulation in question is reasonable and just and did not subject the passenger to any appreciable or unnecessary inconvenience, but was a common sense regulation, made in the interests of the general public, as well as an aid to the practical management of the defendant's business. This regulation obviously avoided the transferring of passengers from one car to another, and the testimony in the case showed that anything which went to decrease the number of times passengers had to get on and off the cars diminished the chances of injury to them.

The evidence showed that when the conductor ejected plaintiff he had a right to do so and used no more force than was necessary. In view of these facts the trial court properly granted the defendant below a new trial on the grounds set forth in his memoranda. The judgment is accordingly affirmed. *Reynolds, P. J.,* and *Allen, J.,* concur.